IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAIMLER TRUST, ET AL.,

*Plaintiffs,*

v.

PRESTIGE ANNAPOLIS, LLC,

*Defendant.*

Civil Action No.: ELH-16-544

**MEMORANDUM OPINION**

Plaintiffs Daimler Trust and Daimler Title Company ("Daimler Title") filed suit on February 25, 2016, against defendant Prestige Annapolis, LLC ("Prestige"), to obtain possession of a 2016 Mercedes-Benz.  ECF 1.  The Complaint, which is supported by two exhibits (filed collectively as ECF 1-2), contains five counts: violation of plaintiffs' due process rights under the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983 ("§ 1983") (Count I); replevin (Count II); deprivation of property without due process of law, in violation of Article 24 of the Maryland Declaration of Rights (Count III); conversion (Count IV); and Declaratory Relief (Count V).  *Id.* ¶¶ 44-106.  Plaintiffs also rely on 42 U.S.C. § 1988 ("§ 1988").  They allege that this Court has federal question jurisdiction under 28 U.S.C. § 1331 and diversity jurisdiction pursuant to 28 U.S.C. § 1332.  *Id.* ¶¶ 3-4.[1]

Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6), Prestige has filed a "Motion to Dismiss and Incorporated Memorandum of Law" (ECF 13, the "Motion"), which challenges, *inter alia*, the Court's subject matter jurisdiction.  Plaintiffs oppose the Motion.  ECF 15

---

[1] By "Memorandum to Counsel" dated March 17, 2016 (ECF 10), I asked plaintiffs to clarify the basis for this Court's jurisdiction.  Plaintiffs responded on March 24, 2016.  ECF 11.

("Opposition").  Prestige has not replied and the time to do so has expired.  *See* Local Rule 105.2.

On March 16, 2016, plaintiffs filed a "Motion to Release Motor Vehicle Upon Court Approval of Bond and Request for Issuance of Show Cause Order."  ECF 9.  I issued the requested "Order to Show Cause" on March 28, 2016.  ECF 12.  Prestige responded on April 29, 2016 (ECF 22), seeking to dissolve the show cause order.  By Order of May 9, 2016 (ECF 23), I postponed the show cause hearing and directed plaintiffs to submit further briefing as to the propriety of holding a show cause hearing in federal court under § 16-206 of the Commercial Law Article of the Maryland Code (2013 Repl. Vol., 2015 Supp.).  Plaintiffs subsequently filed a "Reply Memorandum of Law in Further Support of Motion to Release Motor Vehicle Upon Court Approval of Bond" (ECF 24), which advances additional arguments in opposition to the Motion.

No hearing is necessary to resolve the Motion.  *See* Local Rule 105.6.  For the reasons that follow, I will grant the Motion as to Count I and Count III and deny it in all other respects.

## I.  Factual Background

On April 25, 2015, William Betteridge leased a silver, two-door 2016 Mercedes Benz AMG GT S (the "Vehicle") from an automobile dealership in Annapolis, Maryland, pursuant to a closed-end lease agreement (the "Lease Agreement").  ECF 1 ¶ 19; ECF 1-2 at 1-2.  The lessee has failed to make monthly lease payments since September 18, 2015.  ECF 1 ¶ 24.  Plaintiffs maintain that the Vehicle is currently worth $137,576.  ECF 1 ¶¶ 10, 43.[2]

---

[2] The starting Manufacturer Suggested Retail Price for a 2016 AMG GT S is $129,900. *AMG GT S*, Mercedes-Benz (May 5, 2016), http://www.mbusa.com/mercedes/vehicles/model/ class-GTS/model-GTS.   "[A] court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative

Title to the Vehicle was issued on June 2, 2015, and is held by Daimler Trust as owner. ECF 1 ¶¶ 21, 22.  Plaintiffs allege that "[t]he Lease Agreement was assigned to and became the property of Daimler Trust, and as part of the transaction Daimler Title Co. obtained a lien" on the Vehicle.  *Id.* ¶ 20.  Daimler Title has held the first priority lien on the Vehicle since June 2, 2015.  *Id.* ¶ 23.

"Daimler Trust is a Delaware Trust, whose trustee, BNY Mellon Bank of Delaware, is a Delaware banking corporation.  The sole beneficiary of Daimler Trust is Daimler Trust Holding LLC, whose sole member is Mercedes-Benz Financial Services USA LLC, whose sole member is Daimler Investments US Corporation, a Delaware Corporation."  ECF 11 at 2; *see also* ECF 1 ¶ 7.  Daimler Title is "a corporation organized and existing by virtue of the laws of the State of Delaware . . . ."  ECF 1 ¶ 8.

Plaintiffs contend that Prestige is currently "in control" of the Vehicle.  *Id.* ¶ 9. According to plaintiffs' supplemental briefing (ECF 11 at 2), Prestige "is a Limited Liability Company organized under the laws of Maryland, with a principal place of business in Maryland,

---

facts.'" *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015); *see* Fed. R. Evid. 201(b) (stating that a "court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied,____* U.S. ____, 132 S. Ct. 115 (2011); *Philips v. Pitt County Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). And, "[i]t is not uncommon for courts to take judicial notice of factual information found on the world wide web." *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007); *cf. Jeandron v. Bd. of Regents of Univ. Sys. of Maryland*, 510 F. App'x 223, 227 (4th Cir. 2013) (noting that the court may take judicial notice of information on a website, "so long as the web site's authenticity is not in dispute"). However, "these facts [must be] construed in the light most favorable" to the non-movant. *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013) (*abrogated on other grounds* by *Reed v. Town of Gilbert, Ariz.,* ____ U.S. ____, 135 S. Ct. 2218 (2015), as recognized in *Cahaly v. Larosa*, 796 F.3d 399 (4th Cir. 2015)).

and a registered agent in Maryland. Public records indicate Prestige's sole member is Omid Shaffaat, and public records indicate Mr. Shaffaat is a Maryland resident."

Plaintiffs maintain that Prestige made "modifications to make the vehicle a racing-type car." ECF 1 ¶ 32. According to plaintiffs, "Daimler Trust and Daimler Title Co. did not grant permission, consent or authority for any racing-type or any other modifications to be done" to the Vehicle. *Id.* ¶ 31. An invoice from Prestige in Betteridge's name, dated December 22, 2015, reflects a "TOTAL AMOUNT DUE" from Betteridge to Prestige of $11,730. ECF 1-2 at 1. According to plaintiffs, the "charges were not for repair" to the Vehicle, but rather for the modifications made to it. ECF 1 ¶ 32.

As noted, Betteridge, the lessee of the Vehicle, made no lease payments after September 18, 2015, and is in default of the Lease Agreement. *Id.* ¶ 24. On November 20, 2015, an individual identifying himself as Betteridge's father notified Daimler Trust that Betteridge could no longer pay the lease payments and would return the Vehicle. *Id.* ¶ 25. On December 1, 2015, the same individual notified Daimler Trust that the Vehicle was in Prestige's possession. *Id.* ¶ 26. On December 4, 2015, Betteridge "telephoned Daimler Trust's representative to advise that Prestige would return the vehicle . . . ." *Id.* ¶ 27.

Plaintiffs allege that they negotiated unsuccessfully with Prestige for the return of the Vehicle. *See id.* ¶¶ 28-35. Plaintiffs assert, *id.* ¶ 36: "On January 8, 2016, and without notice to Daimler Trust or Daimler Title Co., Prestige requested that a lien company named Nationwide Lien & Recovery, Inc. enforce a lien against [the Vehicle] in the amount of $49,084.00." Further, plaintiffs aver, ECF 1 ¶ 37: "Prestige's act of raising its lien demand from $11,730.00 to $49,084.00 was done without the knowledge, consent or authority" of the plaintiffs. Plaintiffs

also allege, *id.* ¶ 38: "Prestige then served a Notice of Sale on the Lessee asserting that [the Vehicle] would be auctioned on March 2, 2016 pursuant to state law in order to enforce a lien claim of $50,534.00." *See* ECF 1-2 at 2, "Notice of Sale of Motor Vehicle to Satisfy a Lien."[3]

According to plaintiffs, "Prestige invoked the power of the State of Maryland to impress a nonconsensual (supposed) lien for $50,534.00 in charges for unauthorized . . . modifications" to the Vehicle. ECF 1 ¶ 11. And, it did so without affording plaintiffs notice and a hearing to protect their interests by contesting the validity of Prestige's claims. *Id.* ¶ 15. Plaintiffs contend, *id.* ¶ 39: "Prior to impressing a purported lien for $11,730.00, and prior to increasing that lien claim to $49,084.00 and again to $50,534.00, Prestige had not provided any hearing before an impartial decisionmaker, with adequate notice . . . ." *See also id.* ¶ 15.

## II. Standard of Review

As discussed, the Motion (ECF 13) is premised on Fed. R. Civ. P. 12(b)(1)and 12(b)(6).[4]

### A. Fed. R. Civ. P. 12(b)(1)

Under Fed. R. Civ. P. 12(b)(1), a motion to dismiss for lack of subject matter jurisdiction raises the issue of "whether the court has the competence or authority to hear and decide the case." *Davis v. Thompson,* 367 F. Supp. 2d 792, 799 (D. Md. 2005). The question of subject matter jurisdiction may be raised by the parties or the court, *sua sponte,* at any stage of the

---

[3] According to Prestige, ECF 22 at 1: "The March 2nd 2016 sale was cancelled by the Defendant's auctioneer, because of the chilling effect of this very law suit and the threat of the Plaintiffs to bring the third party auctioneer into a federal court litigation. The auctioneer refused to proceed with the scheduled sale to avoid being hauled into litigation." Plaintiffs aver, ECF 15 at 7 n.3: "Prestige tried to reschedule the extra-judicial sale of the Vehicle with a different auctioneer, once the original auctioneer canceled the original auction after being notified of this lawsuit."

[4] As plaintiffs note, ECF 15 at 2 n.1: "Prestige's motion purports to be brought under Rules 12(b) (1), (2), and (6). However, no argument is made that this Court lacks personal jurisdiction over Prestige pursuant to Rule 12(b)(2) . . . ."

litigation. *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 506 (2006); *see Ellenburg v. Spartan Motors Chassis, Inc.,* 519 F.3d 192, 197 (4th Cir. 2008). Upon a challenge to subject matter jurisdiction, the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of jurisdiction. *Robb Evans & Assocs., LLC v. Holibaugh,* 609 F.3d 359, 362 (4th Cir. 2010); *Evans v. B.F. Perkins Co.,* 166 F.3d 642, 647 (4th Cir. 1999); *see also United States ex. rel. Vuyyuru v. Jadhau,* 555 F.3d 337, 347 (4th Cir. 2009), *cert. denied,* 558 U.S. 875 (2009); *cf. Zoroastrian Ctr. & Darb-E-Mehr of Metro. Washington, D.C. v. Rustam Guiv Found. of New York,* ___ F.3d ___, 2016 WL 2343251, at *5 (4th Cir. May 4, 2016).

Federal courts are courts of limited jurisdiction and "may not exercise jurisdiction absent a statutory basis." *Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 552 (2005). They "have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend,* 559 U.S. 77, 94 (2010).

A challenge to subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "'that the jurisdictional allegations of the complaint [are] not true.'" *Kerns v. United States,* 585 F.3d 187, 192 (4th Cir. 2009)(citation omitted); *see also Buchanan v. Consol. Stores Corp.,* 125 F. Supp. 2d 730, 736 (D. Md. 2001). In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns,* 585 F.3d at 192; *see also Ibarra v. United States,* 120 F.3d 472, 474 (4th Cir. 1997).

In a factual challenge, on the other hand, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns,* 585 F.3d at 192. In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. *Velasco v. Gov't of Indonesia,* 370 F.3d 392, 398 (4th Cir. 2004); *Evans,* 166 F.3d at 647. That is, "the court may look beyond the pleadings and 'the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Khoury v. Meserve,* 268 F. Supp. 2d 600, 606 (D. Md. 2003) (citation omitted), *aff'd,* 85 Fed. Appx. 960 (4th Cir. 2004).

Here, Prestige raises a facial challenge in that it asserts that the allegations pleaded in the Complaint are insufficient to establish subject matter jurisdiction.  Under the "well-pleaded complaint" rule, the facts showing the existence of subject matter jurisdiction "must be affirmatively alleged in the complaint."  *Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999) (citing *McNutt v. Gen'l Motors Acceptance Corp.*, 298 U.S. 178 (1936)). "A court is to presume, therefore, that a case lies outside its limited jurisdiction unless and until jurisdiction has been shown to be proper."  *United States v. Poole*, 531 F.3d 263, 274 (4th Cir. 2008) (citing *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994)).

### B.      Fed. R. Civ. P. 12(b)(6)

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6).  *Goines v. Valley Cmty. Servs. Bd.*, ____ F.3d ____, 2016 WL 2621262, at *3 (4th Cir. May 9, 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young,* ___ U.S. ___, 133 S.Ct. 1709 (2013); *Edwards v. City of Goldsboro*,

178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). It provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendant with "fair notice" of the claim and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, ___ U.S. ___, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint is insufficient if it provides no more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," is insufficient. *Twombly*, 550 U.S. at 555.

To satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). Put another way, in reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint,'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, ___ U.S. ____, 132 S. Ct. 402 (2011); *Monroe v. City of Charlottesville,* 579 F.3d 380, 385-86 (4th Cir. 2009), *cert. denied*, 559 U.S. 992 (2010). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, ___ U.S. ___, 132 S. Ct. 1960 (2012).

A motion asserting failure to state a claim typically "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards*, 178 F.3d at 243 (quotation marks omitted); *see Houck*, 791 F. 3d at 484; *Tobey v. James*, 706 F.3d 379, 387 (4th Cir. 2013). But, "if all facts necessary to the affirmative defense 'clearly appear[] *on the face of the complaint*,'" or in other material that is the proper subject of consideration under Rule

12(b)(6), such a defense can be resolved on the basis of the facts alleged in the complaint. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc) (citation omitted) (emphasis in *Goodman*); *see Houck*, 791 F.3d at 484.

Ordinarily, in resolving a motion under Rule 12(b)(6), a court is "generally limited to a review of the allegations of the complaint itself." *Goines*, 2016 WL 2621262, at *3. *See Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007); *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013) (*abrogated on other grounds* by *Reed v. Town of Gilbert, Ariz.*, ____ U.S. ____, 135 S. Ct. 2218 (2015), as recognized in *Cahaly v. Larosa*, 796 F.3d 399 (4th Cir. 2015)). Under certain limited exceptions, however, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).

Of relevance here, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits . . . ." *Goines*, 2016 WL 2621262, at *3 (citations omitted); *see U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (quoting *Philips v. Pitt Cty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *see Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). A court may also "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 2016 WL 2621262, at *3

(citations omitted).  To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'"  *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 2016 WL 2621262, at *5 (citing *N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)).  "When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper."  *Goines*, 2016 WL 2621262, at *5.  Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

On this basis, I have considered the exhibits that plaintiffs appended to their Complaint.

### III.  Discussion

The Motion advances two primary arguments.  First, Prestige contends that plaintiffs fail to state a claim under § 1983 and, accordingly, that this Court lacks federal question jurisdiction pursuant to 28 U.S.C. § 1331.  *See* ECF 13 at 5.  Second, Prestige maintains that this Court lacks diversity jurisdiction because "the amount in controversy between the diverse parties does not in fact exceed $75,000 as required by 28 USC §1332 . . . ." *Id.* at 2.  I shall address each argument in turn.

- 11 -

**A.  28 U.S.C. § 1331; 42 U.S.C. § 1983; and 42 U.S.C. § 1988**

**1.**

Section 1331 of Title 28 of the United States Code grants federal district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  As the Supreme Court has noted, "there is no serious debate that a federally created claim for relief is generally a sufficient condition for federal question jurisdiction," because in that case "federal law creates the right of action and provides the rules of decision." *Mims v. Arrow Fin. Servs., LLC*, ___ U.S. ____, 132 S.Ct. 740, 748 (2012) (internal citations and quotation marks omitted).  The "'presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'" *Rivet v. Regions Bank of La.,* 522 U.S. 470, 475 (1998) (citation omitted).

Section 1983 of Title 42 of the United States Code states: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person with the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ."  It provides a private cause of action for constitutional violations committed by persons acting under color of state law. However, it "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver,* 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan,* 443 U.S. 137, 144 n. 3 (1979)). Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state

law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.,* 526 U.S. 687, 707 (1999); *see also West v. Adkins*, 487 U.S. 42, 49 (1988); *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 928-930 (1982).

To establish a claim under § 1983, a plaintiff must prove: (1) that the defendant, a person, "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States;" and (2) that the defendant acted "under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson,* 249 F.3d 301, 310 (4th Cir. 2001) (citation and internal quotation marks omitted), *cert. denied*, 534 U.S. 952  (2001).   Thus, in order successfully to assert a claim of violation of constitutional rights under § 1983, the defendant must be a state actor.   In other words, "the under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'"  *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (citation omitted).

In this regard, the Fourth Circuit has described the "Bill of Rights as a shield that protects private citizens from the excesses of government, rather than a sword that they may use to impose liability upon one another."   *Holly v. Scott*, 434 F.3d 287, 292 (4th Cir. 2006), *cert. denied*, 547 U.S. 1168 (2006).   Notably, the Fourth Circuit has said: "'[P]rivate activity will generally not be deemed 'state action' unless the state has so dominated such activity as to convert it to state action: 'Mere approval of or acquiescence in the initiatives of a private party' is insufficient.'"   *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 (4th Cir. 2009) (quoting *DeBauche v. Trani*, 191 F.3d 499, 507 (4th Cir. 1999) (alterations in *Wahi*), *cert. denied*, 558 U.S. 1158 (2010).

However, "there are infrequently arising circumstances under which the actions of an ostensibly private party will be deemed to satisfy the color-of-law requirement." *Philips*, 572 F.3d at 181. As the Fourth Circuit has noted, "cases deciding when private action might be deemed that of the state have not been a model of consistency . . . ." *Mentavlos*, 249 F.3d at 313 (citations and quotation marks omitted). But, "the critical inquiry has remained constant. After examining the relevant facts and circumstances, the inquiry in each case is whether the conduct is fairly attributable to the state." *Id.* (citations and quotation marks omitted); *see Philips*, 572 F.3d at 182 ("In the end, however, 'there is no specific formula' for determining whether state action is present . . . . 'What is fairly attributable [to the state] is a matter of normative judgment, and the criteria lack rigid simplicity.'")(quoting *Holly*, 434 F.3d at 292 (4th Cir. 2006)(alterations in *Philips*)).

In *Mentavlos*, 249 F.3d at 313, the Fourth Circuit explained various tests that it has employed to determine whether the conduct of a private party may be "'fairly attributable' to the State." The Court said, *id.* at 313-14:

> [I]n *Andrews v. Federal Home Loan Bank*, 998 F.2d 214 (4th Cir. 1993), we identified four circumstances under which the Supreme Court had held that a private party may be deemed a state actor for purposes of § 1983 liability:
>
>> (1) when the state has coerced the private actor to commit an act that would be unconstitutional if done by the state; (2) when the state has sought to evade a clear constitutional duty through delegation to a private actor; (3) when the state has delegated a traditionally and exclusively public function to a private actor; or (4) when the state has committed an unconstitutional act in the course of enforcing a right of a private citizen.
>
> *Id.* at 217; *see also DeBauche v. Trani,* 191 F.3d 499, 507 (4th Cir. 1999), *cert. denied,* 529 U.S. 1033, 120 S.Ct. 1451, 146 L.Ed.2d 337 (2000).

In *Haavistola* [*v. Community Fire Co. of Rising Sun*, 6 F.3d 211 (4th Cir. 1993)], another panel of this court summarized three situations in which conduct by a private entity could be fairly attributable to the state: (1) when a sufficiently close nexus exists between a regulated entity and a state such that the actions of the former are fairly treated as those of the state; (2) when the state "has exercised coercive power or has provided such significant encouragement that the action must in law be deemed to be that of the state"; and (3) "when the private entity has exercised powers that are traditionally the exclusive prerogative of the state." [*Id.*] at 215 (internal citations and quotation marks omitted).

Most recently, in *Goldstein* [*v. Chestnut Ridge Volunteer Fire Co.*, 218 F.3d 337 (4th Cir. 2000)], we emphasized the fact-based nature of the state action inquiry, reiterating that "the state action determination requires an examination of all the relevant circumstances, in an attempt to evaluate the degree of the Government's participation in the private party's activities." [*Id.*] at 342 (internal quotation marks omitted). There, we identified several considerations which are pertinent to the inquiry: (1) "whether the injury caused is aggravated in a unique way by the incidents of governmental authority"; (2) "the extent and nature of public assistance and public benefits accorded the private entity"; (3) "the extent and nature of governmental regulation over the institution"; and (4) "how the state itself views the entity, *i.e.*, whether the state itself regards the actor as a state actor." *Id.* at 343 (internal quotation marks omitted). Like its predecessors in this circuit, however, the *Goldstein* decision summarized considerations already set forth by precedent, and did not purport to overrule our prior precedents or espouse new areas of inquiry. Indeed, *Haavistola* summarized the standard set forth by the Supreme Court in *Blum* [*v. Yaretsky*, 457 U.S. 991, 1004-05 (1982)], *see Haavistola*, 6 F.3d at 215, which is still relied upon by the Court today, *see* Brentwood [*Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288 (2001)].

The Fourth Circuit concluded by identifying "the ultimate inquiry": "Is there a sufficiently 'close nexus' between the challenged actions of [the defendants] and the State . . . such that their actions 'may be fairly treated as that of the State itself.'" *Mentavlos*, 249 F.3d at 314 (quoting *Brentwood Acad.*, 531 U.S. at 295).

Plaintiffs also rely on Title 42 U.S.C. § 1988. It provides that in federal civil rights actions "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."

- 15 -

"As a general matter, a litigant must pay its own attorneys' fees in the absence of a statutory or enforceable contractual provision allowing fees to be awarded to a prevailing party." *E.E.O.C. v. Propak Logistics, Inc.*, 746 F.3d 145, 151 (4th Cir. 2014).  The Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988(b), is a general statute applicable to most civil rights litigation in federal court, including actions brought under § 1983.  As noted, it provides that in federal civil rights actions "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."  *See generally Hensley v. Eckerhart,* 461 U.S. 424, 426 (1983).[5]  The term "prevailing party" is a statutory term of art.  In order to be a "prevailing party," a plaintiff must achieve a "material alteration of the legal relationship of the parties" and there must be "judicial *imprimatur* on the change." *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.,* 532 U.S. 598, 604–05 (2001); *see Grissom v. The Mills Corp.,* 549 F.3d 313, 318 (4th Cir. 2008).  This requirement protects against "an award of attorney's fees when the merits of the plaintiff's case remain unresolved-when, for all one knows, the defendant only abandoned the fray because the cost of litigation-either financial or in terms of public relations-would be too great." *Buckhannon,* 532 U.S. at 617 (Scalia, J., concurring).

Applying this rule, the *Buckhannon* Court determined that the plaintiff was not entitled to attorney's fees because the state legislature enacted two bills that mooted his claims.  *Id.* at 600-02.  The *Buckhannon* Court also observed that private settlements generally do not entitle a plaintiff to attorney's fees because they lack "the judicial approval and oversight involved in

---

[5] In *Whitehead v. Colvin*, No. C15-5143RSM, 2016 WL 1464469, at *2 n.1 (W.D. Wash. Apr. 14, 2016), the court noted that *Hensley*, 461 U.S. 424, has been superseded, in part, by the Prison Litigation Reform Act.  As this case does not involve prisoner litigation, this statutory change is not relevant here.

consent decrees." *Id.* at 604 n. 7; *see Smyth ex rel. Smyth v. Rivero,* 282 F.3d 268, 279 (4th Cir. 2002).

**2.**

As to Count I, the crux of plaintiffs' argument is that "Prestige acted under color of state law to deprive Daimler Trust and Daimler Title Co. of their property interests in [the vehicle] . . . in violation of the rights secured by the Fourteenth Amendment to the United States Constitution." ECF 1 ¶ 10. In particular, plaintiffs allege that "Prestige has invoked the power of the State of Maryland to schedule an extra-judicial sale of [the vehicle] to enforce its purported lien . . . ." ECF 1 ¶ 14; *see id.* ¶ 45 (alleging that Prestige's "actions in employing state law" to conduct an "extra-judicial sale" violated § 1983). As clarified by plaintiffs' subsequent briefing (ECF 11), plaintiffs contend, *id.* at 3-4: "A statutory scheme which results in the state validating the involuntary transfer of a motor vehicle from one private party to another necessarily involves overt and significant aid by state officials, thereby implicating due process protections."

Prestige maintains that, insofar as it was allegedly acting under color of Maryland law, it has "the same affirmative defense [of good faith] that a state official would enjoy . . . ."[6] ECF 13 at 4. Plaintiffs counter, ECF 15 at 2:

> It goes without saying that a potential affirmative defense cannot deprive this Court of jurisdiction. Taking all facts pled in the complaint as true, it is far from clear that Prestige acted in good faith. Prestige's defense largely rests on their own subjective state of mind, and any good-faith defense Prestige may have is consequently not the proper basis of a motion to dismiss.

---

[6] In its "Response to Order to Show Cause" (ECF 22), Prestige submits that "it acted upon reasonable reliance that the [garagemen's lien] statute is valid and constitutional, but not as a state actor." *Id.* at 4. However, Prestige does not explain why it should not be considered a state actor for purposes of § 1983.

In my view, the parties gloss over the central defect in the Complaint: Prestige's conduct in seeking to establish and enforce a garageman's lien pursuant to a Maryland statute is not state action within the meaning of § 1983.

Although the parties do not provide a thorough overview of Maryland's garagemen's lien statute, an understanding of that law is essential to determine whether state action is implicated in the establishment and enforcement of a garagemen's lien.  In *Allstate Lien & Recovery Corp. v. Stansbury*, 445 Md. 187, 200-03, 126 A.3d 40, 48-49 (2015), the Maryland Court of Appeals explained the process by which a garageman's lien is created and enforced in Maryland pursuant to § 16-201 *et seq.* of the Commercial Law ("C.L.") Article of the Maryland Code (2013 Repl. Vol., 2015 Supp.).[7]  It said, *id.* (quoting *Friendly Fin. Corp. v. Orbit Chrysler Plymouth Dodge Truck, Inc.*, 378 Md. 337, 345-47, 835 A.2d 1197, 1202-03 (2003)):

> The Maryland General Assembly, when it enacted the provisions relating to garageman's liens, envisioned that the statute would operate according to the following sequence of events:
>   (1) The owner in possession of the motor vehicle takes it (or has it towed) to the garage and requests that it be repaired. § 16–202(c)(1).[]
>   (2) The garage performs the requested repairs, creating a lien in favor of [the] garage for the repair bill, and bills the owner. § 16–202(c)(2)(i).[]
>   (3) The owner fails to pay the bill.

---

[7] Prestige asserts that "the clear holdings of Maryland's state courts" is that the law governing the garageman's liens is constitutional.  ECF 22 at 2.  It relies on *AMI Operating Partners Ltd. P'ship v. JAD Enterprises, Inc.*, 77 Md. App. 654, 551, A.2d 888 (1989), *cert. denied*, 315 Md. 307, 554 A.2d 393 (1989).  Prestige's reliance on *AMI Operating Partners Ltd P'ship* is misplaced.  In that case, the Maryland Court of Special Appeals upheld the constitutionality of a statutory *mechanic's lien* concerning real property.  *Id.* at 660-63, 551 A.2d at 891-92.  The process for establishment of a mechanic's lien concerning real property  under the statutory scheme discussed in *AMI Operating Partners Ltd P'ship* is different from that for a garageman's lien pursuant to C.L. § 16-201 *et seq.*  Notably, as the Court of Special Appeals explained, a mechanic's lien concerning real property "can be created only by a court, and then only after the owner has had an opportunity to contest both the claim itself and the claimant's entitlement to a lien."  *AMI Operating Partners Ltd. P'ship*, 77 Md. App. at 661, 551 A.2d at 891.

- 18 -

(4) The garage stores the vehicle, creating a lien in favor of the garage for storage costs. § 16–202(c)(1)(ii).

(5) The garage retains possession of the vehicle until either the charges are paid or the lien is otherwise discharged. § 16–203(a).[]

(6) The garage, within 30 days of the creation of the lien, sends notice of the lien to all holders of perfected security interests. § 16–203(b)(1)(i).[]

(7) If the bill remains unpaid for 30 days, the garage, at its option, may initiate a public sale of the vehicle. § 16–207(a).[]

(8) The garage sends notice, at least 10 days prior to sale, to the owner, all holders of perfected security interests, and the Motor Vehicle Administration. § 16–207(b)(2).[]

(9) The garage publishes notice once a week for the two weeks immediately preceding the sale in one or more newspapers of general circulation in the county where the sale is to be held. § 16–207(b)(1).[]

(10) The garage sells the vehicle. § 16–207.

(11) Proceeds of sale are applied as follows: § 16–207(e)(1)(i).[]

i. Expenses of the sale. § 16–207(e)(1)(ii).

ii. Third-party storage fees. § 16–207(e)(1)(ii).

iii. The lien claim for garage repair and storage bills. § 16–207(e)(1)(iii).

iv. Any purchase money security interest. § 16–107(e)(1)(iv).

v. Any remaining secured parties of record. § 16–207(e)(1)(v).

vi. Any remaining balance to the owner. § 16–207(e)(4).[]

Following the sale, Maryland law requires the Motor Vehicle Administration ("MVA") to issue clear title to the vehicle if certain criteria are satisfied.   C.L. § 16-207(d) provides, in relevant part:

(1) Except as provided in § 13-110 of the Transportation Article,[8] the Motor Vehicle Administration shall issue a title, free and clear of any lien, to the

---

[8]§ 13-110 of the Transportation Article of the Maryland Code (2013 Repl. Vol., 2015 Supp.) provides:

The Administration shall refuse to issue a certificate of title of a vehicle if:

(1) The application contains any false or fraudulent statement;

(2) The applicant has failed to furnish information or documents required by statute or regulations adopted by the Administration;

(3) Any required fee has not been paid;

(4) The applicant is not entitled to a certificate of title under the Maryland Vehicle Law; or

(5) The Administration has reasonable grounds to believe:

(i) That the applicant is not the owner of the vehicle;

- 19 -

purchaser of any motor vehicle or mobile home sold under this section, if the holder of the lien on the motor vehicle or mobile home submits to the Motor Vehicle Administration a completed application for a certificate of title with:

(i) A copy of the newspaper publication required by subsection (b) of this section;

(ii) A copy of the registered or certified letter required under subsection (b) of this section to be sent to holders of perfected security interests in the motor vehicle or mobile home and the Motor Vehicle Administration, and the return card;

(iii) A copy of the registered or certified letters required by subsection (b) of this section to be sent to the owner of the motor vehicle or mobile home, and the return card;

(iv) If applicable, a written statement from the lienor that the lienor stored the vehicle in accordance with an agreement with an insurer;

(v) An auctioneer's receipt;

(vi) If applicable, certification by holders of perfected security interests;

(vii) In the case of mobile homes manufactured after 1976 and motor vehicles, a pencil tracing of the vehicle identification number or a statement certifying the vehicle identification number; and

(viii) Any other reasonable information required in accordance with regulations adopted by the Administration.

As plaintiffs appear to concede (*see* ECF 11 at 4-5, ECF 24 at 20), issuing clear title to the vehicle following its sale by a garageman is thus the sole function performed by the State of Maryland.

As clarified by plaintiffs in their "Reply Memorandum of Law in Further Support of Motion to Release Motor Vehicle Upon Court Approval of Bond" (ECF 24 at 19), they assert that Prestige qualifies as a state actor under the third or fourth approach articulated by the Fourth Circuit in *DeBauche*, 191 F.3d at 507:  "(3) when the state has delegated a traditionally and exclusively public function to a private actor; or (4) when the state has committed an

---

(ii) That the issuance of a certificate of title to the applicant would be a fraud against another person; or

(iii) That the vehicle does not comply with Title 2, Subtitle 11 of the Environment Article or any regulation adopted under that subtitle.

unconstitutional act in the course of enforcing a right of a private citizen."[9]  They aver, ECF 24 at 19: "There is state action in this case based upon the third and fourth categories . . . ."

Plaintiffs argue that Prestige's purported actions fall within the third circumstance identified in *DeBauche*, 191 F.3d at 507, because "the garageman's lien sale cannot be accomplished without the affirmative acts of the . . . MVA . . . transferring vehicle ownership to another party."  ECF 24 at 20.

As to the third circumstance identified in *DeBauche*, 191 F.3d at 507, it is notable that Prestige purportedly established and then sought to enforce its garageman's lien purely as a consequence of a private commercial transaction with Betteridge to modify the Vehicle.  There is no allegation that Prestige was operating on behalf of the State or in conjunction with State officials.  *See Goichman v. Rheuban Motors, Inc.*, 682 F.2d 1320, 1322 (9th Cir. 1982) (holding that a tow truck operator who towed a vehicle "at the direction of a Los Angeles law enforcement officer" was a state actor for purposes of § 1983); *Huemmer v. Mayor & City Council of Ocean City*, 632 F.2d 371, 372 (4th Cir. 1980) (affirming the grant of summary judgment as to a municipally authorized tow truck operator, who removed a vehicle pursuant to a municipal ordinance concerning illegally parked vehicles on private property, where the district court concluded that "while his activity may have been state action, it was limited to the towing, which was constitutionally permissible, and unrelated to the failure to afford notice and a hearing, the pertinent constitutional defect").

Plaintiffs rely, in part, on *Caesar v. Kiser*, 387 F. Supp. 645 (M.D.N.C. 1975).  ECF 24 at 19-20.  In *Caesar*, 387 F. Supp. 645, the court granted partial summary judgment for plaintiff in

_____

[9] Plaintiffs appear to concede that the first two circumstances identified in *DeBauche*, 191 F.3d at 507, do not apply.  *See* ECF 24 at 19.

a case concerning a § 1983 claim as to the sale of vehicle parts pursuant to a North Carolina possessory lien statute. The court concluded, in relevant part, that the issuance of clear title to a vehicle by the North Carolina Department of Motor Vehicles qualified as state action for purposes of § 1983. It said, in pertinent part, *id.* at 647:

> In the case before the Court, the sale of the property was not accomplished by the actions of state officials or court process. However, this does not necessarily preclude a determination of state action. The North Carolina Department of Motor Vehicles plays an integral role in the sale of vehicles under the North Carolina possessory lien statute, N.C.G.S. § 44A-4. The possessory lien and the sale provision on vehicles are statutory creations and notice of the sale is required to be given to the Commissioner of Motor Vehicles. N.C.G.S. § 44A-4(f). The sale procedure is conducted by public or private auction and in order for a purchaser to receive valid title from a sale it is necessary that the Department record the transfer of title from the owner to the purchaser. Under North Carolina law, the sale could not be accomplished without the affirmative acts of the Department in transferring the indicia of ownership. Consequently, by statutorily authorizing and empowering the lienor to sell the vehicle and by authorizing the Department to record and recognize the transfer of title, the State has delegated to lienors of motor vehicles the traditional governmental function of lien enforcement and enabled the lienor to pass good title to motor vehicles which they do not own—without a judicial determination of the validity of the underlying debt.
>
> The state is, therefore, actively involved in the creation and the enforcement of the lien on motor vehicles and such must be held to constitute 'state action' as that term is used in 42 U.S.C. § 1983.

Plaintiff's reliance on *Caesar*, 387 F. Supp. 645, is misplaced. As a preliminary matter, the North Carolina Department of Motor Vehicles played a greater role in the sale than would the MVA pursuant to C.L. § 16-207(d)(1). As the court explained in *Caesar*, 387 F. Supp. at 646, it was only after "conferring with officials of the North Carolina Department of Motor Vehicles" that the garageman "proposed to sell the motorcycle parts" pursuant to North Carolina statute. The court also said, *id.*:

> [T]he defendant, having been notified by the North Carolina Department of Motor Vehicles that he had given them proper notice of the proposed sale and further having been informed by the Department that notice of the impending sale was being forwarded by the Department to the plaintiff and persons holding liens against the plaintiff's vehicle, conducted a sale of plaintiff's motorcycle at the defendant's place of business.

By contrast, pursuant to C.L. § 16-207(d)(1), the MVA's sole function is to issue clear title to the vehicle following the sale if certain statutory criteria are satisfied. Moreover, *Caesar*, 387 F. Supp. 645, was decided more than forty years ago—well before the Supreme Court and the Fourth Circuit offered crucial instruction as to when conduct by private actors may be fairly attributed to the state. Accordingly, the court in *Caesar*, 387 F. Supp. 645, had no opportunity to consider more recent guidance on when private conduct may be fairly attributed to the state for purposes of § 1983.

Plaintiffs also rely on a footnote in *Associates Commercial Corp. v. Wood*, 22 F. Supp. 2d 502 (D. Md. 1998). In *Wood*, the court granted summary judgment in favor of plaintiff and declared unconstitutional a portion of Maryland's then-existing Abandoned Vehicle Statute.[10] In relevant part, Judge Messitte said, *id.* at 506 n.6:

> Although Defendant does not press the point, it is appropriate to note that under the Maryland statute there is sufficient participation by the State to constitute state action and implicate due process. The statute not only authorizes the seizure of eligible vehicles, but validates the transfer of ownership of the vehicle to the seizing party. *See Lugar v. (Edmondson) Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) (state officials' joint participation with private party in effecting prejudgment attachment of property implicates due process). *See also Huemmer*, 474 F. Supp. at 711 ("[Ocean] City must be deemed to have been a participant in the towing process because, through its ordinance, it authorized . . . an impounding ordinance failing to comply with those due process standards ordinarily required when personal property is to be confiscated.").

---

[10] Section 25-210 of the Transportation Article of the Maryland Code (2012 Repl. Vol., 2015 Supp.) was repealed in 2012.

It is unclear how this footnote supports plaintiffs' position.  I note that *Wood*,      22    F. Supp. 2d 502, did not concern a claim pursuant to § 1983.  Rather, the plaintiff sought replevin, detinue, and a declaration regarding the constitutionality of Maryland's Abandoned Vehicle Statute.  *Id.* at 504.  Moreover, the footnote concerning state action and due process appears in the context of an analysis of the hearing and notice requirements that courts have required of state actors (or at least those working on their behalf) before final deprivation of a property interest in a vehicle.  *Id.* at 505-06.  Accordingly, I do not read the footnote in *Wood*, 22 F. Supp. 2d at 506 n.6, to stand for the proposition that garagemen acting pursuant to Maryland's garagemen's lien statute are state actors for purposes of § 1983.

Plaintiffs also argue (ECF 24 at 21) that Prestige's conduct falls within the fourth circumstance that the Fourth Circuit identified in *DeBauche*, 191 F.3d at 507: "[W]hen the state has committed an unconstitutional act in the course of enforcing a right of a private citizen."  Plaintiffs rely on *Barry Properties, Inc. v. Fick Bros. Roofing Co.*, 277 Md. 15, 353 A.2d 222 (1976).  ECF 24 at 21.

In *Barry Properties*, 277 Md. 15, 353 A.2d 222, the Maryland Court of Appeals considered whether Maryland's then-existing mechanics' lien statute "is compatible with the due process clauses of Article 23 of the Maryland Declaration of Rights and the Fourteenth Amendment of the United States Constitution."  *Id.* at 18, 353 A.2d at 225.[11]   In relevant part, the court said, *id.* at 22-23, 353 A.2d at 227 (citations omitted):

---

[11] The Maryland Court of Special Appeals explained in *AMI Operating Partners Ltd. P'ship*, 77 Md. App. at 660-61, 551 A.2d at 891: "As a result of *Barry Properties,* the Legislature, which was in session when the case was decided, promptly rewrote the law in a manner 'designed to avoid the procedural due process denial found in the former statute.' *Tyson*

First, we note, in order for the due process clauses of Article 23 and the Fourteenth Amendment to apply there must be 'state action.'  We think it clear that mechanics' liens involve state action since they are created, regulated and enforced by the State.  It appears that the Supreme Court would agree considering that it has voided on due process grounds state garnishment and replevin statutes and in order to have done so the Court must have concluded that there was sufficient state involvement with those prejudgment creditor remedies, which were also created, regulated and enforced by the state, to activate the protections of the Fourteenth Amendment.

As a preliminary matter, *Barry Properties*, 277 Md. 15, 353 A.2d 222, did not concern a § 1983 claim.  Moreover, the statutory scheme for mechanics' liens that the Maryland Court of Appeals considered in *Barry Properties* was markedly different from the garagemen's lien statute at issue here.   The Maryland Court of Appeals explained the then-existing mechanics' lien statute, *id.* at 20-21, 353 A.2d at 226:

> The statute . . . provides that if either a subcontractor (who gives the § 9-103(a) notice) or a general contractor has not been fully paid and desires to retain his mechanics' lien, he must within the 180 days prescribed by § 9-105(e), file a claim containing specified information concerning the claim, § 9-105(c), with the clerk of the circuit court of the county where the property is located, at which time the lien will be recorded on a special 'Mechanics' Lien Docket.'  § 9-105. Once filed with the clerk the lien subsists for one year from the date of its filing unless within that period the claimant commences a proceeding to enforce it, in which case the lien is 'stayed until the conclusion of the proceeding.' § 9-106. During that one-year period, however, 'the owner of the property subject to the lien, or any other person interested in it, may bring proceedings in equity to compel the claimant to prove the validity of the lien or have it declared void,' *id.; see Continental Steel Corp. v. Sugarman*, 266 Md. 541, 548, 295 A.2d 493 (1972); Rule BG75 a; or, with court approval, the owner may release his property from the lien by substituting a bond.[] Rule BG75 b. An action to enforce a mechanics' lien that has been recorded is an in rem equity proceeding of which all interested parties are entitled to notice as in other equity actions. *See Grinnell Co. v. City of Crisfield*, 264 Md. 552, 561, 287 A.2d 486 (1972); Rule BG71 a. If in such a proceeding the claimant establishes that he is entitled to the lien, the court will order a sale of the property to pay the claimant unless the amount found to be due is paid on or before a specified date. Rule BG73.

*v. Masten Lumber & Supply,* 44 Md.App. 293, 295, 408 A.2d 1051 (1979), *cert. denied* 287 Md. 758 (1980)."

In short, the degree of State involvement in the mechanics' lien statute that the Maryland Court of Appeals considered in *Barry Properties*, 277 Md. 15, 353 A.2d 222, was greater than the degree of State involvement here. That Prestige acted pursuant to a State statute does not convert its action to those of the State for purposes of § 1983. The "degree of the Government's participation" is minimal. *Goldstein*, 218 F.3d at 342 (citation and quotation marks omitted). The injury is not aggravated in any unique way by the incidents of governmental authority. *See id.* at 343.

Aside from the mere existence of the garageman's lien statute, which codified and updated the common law, *see Allstate Lien & Recovery Corp.*, 445 Md. at 203-05, 126 A.3d at 49-51, the sole way in which a Maryland garageman's lien implicates state action is that, pursuant to C.L. § 16-207(d)(1), the MVA must issue clear title to a vehicle after a sale if certain statutory criteria are satisfied.

Issuance of clear title to a vehicle if certain statutory criteria are satisfied pursuant to C.L. § 16-207(d)(1) is precisely the type of "'[m]ere approval of or acquiescence in the initiatives of a private party'" that the Fourth Circuit has said does *not* constitute state action for purposes of § 1983. *Wahi*, 562 F.3d at 616 (quoting *DeBauche*, 191 F.3d at 507). Indeed, nearly forty years ago, the Third Circuit rejected such an argument. *See Parks v. "Mr. Ford"*, 556 F.2d 132, 141 (3d Cir. 1977) (en banc).[12] It said, *id.* (citation omitted):

---

[12] In *Parks*, 556 F.2d 132, the court found that the retention of vehicles pursuant to Pennsylvania's common law garageman's lien did not constitute state action for purposes of § 1983, *id.* at 135, but concluded that "state action is present when a garageman sells a customer's vehicle" pursuant to Pennsylvania statute. *Id.* at 141. I note that *Parks*, 556 F.2d 132, was decided five years before *Lugar*, 457 U.S. 922. It applied a standard for identifying state action under § 1983, *Parks*, 556 F.2d at 135, that differs from more recent guidance from the Fourth Circuit. *See, e.g., Mentavlos*, 249 F.3d at 313-14. Nevertheless, I agree with the

> If the role played by state employees in issuing new certificates of title to garagemen who foreclose on their liens were enough to infuse those foreclosures with state action, then obviously there would be state action as well whenever a new or used car is purchased and a new certificate of title is issued. By the same logic, the service which state employees perform in recording deeds and mortgages would seem to inject state action into virtually every real estate transaction. We do not believe that any of these essentially private transactions, which number in the millions each year, may be said to constitute state action simply because state employees participate in the negligible role of record-keepers.

In light of the foregoing, plaintiffs fail to allege state action and thus they have not stated a viable claim pursuant to § 1983. Therefore, plaintiffs are not entitled to relief under § 1988. Accordingly, as to Count I, this Court lacks federal question jurisdiction pursuant to 28 U.S.C. § 1331. Count I must be dismissed.

Plaintiffs' Opposition (ECF 15) also states, *id.* at 11: "Should the Court disagree with Plaintiffs' analysis, Plaintiffs request the dismissal be without prejudice so that they may exercise their right to amend the complaint to cure any perceived deficiencies." As to Count I, I disagree.

Fed. R. Civ. P. 15(a)(2) states, in part: "The court should freely give leave [to amend] when justice so requires." *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc); *Simmons v. United Mortgage & Loan Inv., LLC*, 634 F.3d 754, 769 (4th Cir. 2011). However, "the grant or denial of an opportunity to amend is within the discretion of the District Court . . . ." *Foman*, 371 U.S. at 182. "Delay [in the case's resolution] alone is an insufficient reason to deny leave to amend." *Edwards*, 178 F.3d at 242 (citation omitted). "Rather, the delay must be accompanied by prejudice, bad faith, or futility."

---

Third Circuit's conclusion that the mere issuance of clear title to a vehicle following a sale pursuant to a garageman's lien does not constitute state action for purposes of § 1983.

*Id.* (citation omitted); *see Simmons, LLC*, 634 F.3d at 769; *Equal Rights Center v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010); *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008); *Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008).

An amendment is futile "when the proposed amendment is clearly insufficient or frivolous on its face." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986). An amendment is also futile if it would fail to withstand a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). *Perkins v. United States,* 55 F.3d 910, 917 (4th Cir. 1995); *see Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011); *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.,* 525 F.3d 370, 376 (4th Cir. 2008).

In my view, despite several opportunities to clarify how state action might be implicated by Prestige's conduct, plaintiffs fail to advance a viable allegation as to state action for purposes of § 1983. Indeed, as noted, plaintiffs appear to concede (*see* ECF 11 at 4-5, ECF 24 at 20) that issuing clear title to a vehicle following its sale by a garageman is the sole function that the State of Maryland performs pursuant to Maryland's garagemen's lien statute. Accordingly, an amended complaint as to Count I would not survive a motion to dismiss and would thus be futile. Therefore, leave to amend Count I is denied.

## B.      Article 24 of the Maryland Declaration of Rights

Article 24 of the Maryland Declaration of Rights provides: "That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."

- 28 -

Although the Motion (ECF 13) does not address Count III of the Complaint, deprivation of property without due process of law, in violation of Article 24 of the Maryland Declaration of Rights, I note that "Article 24 . . . is the state law equivalent of the Fourteenth Amendment of the United States." *Hawkins v. Leggett,* 955 F. Supp. 2d 474 (D. Md. 2013) (quotation marks omitted).  Article 24 "has been interpreted to apply 'in like manner and to the same extent as the Fourteenth Amendment of the Federal Constitution,' so that 'decisions of the Supreme Court on the Fourteenth Amendment are practically direct authorities.'" *Frey v. Comptroller of Treasury,* 422 Md. 111, 176, 29 A.3d 475, 513 (2011) (quoting *Attorney Gen. of Maryland v. Waldron,* 289 Md. 683, 704, 426 A.2d 929, 941 (1981)). "Therefore, the analysis under Article 24 is, for all intents and purposes, duplicative of the analysis under the Fourteenth Amendment." *Hawkins,* 955 F. Supp. 2d 474.

The district court may dismiss a complaint, *sua sponte*, for failure to state a claim.  *See Eriline Co. S.A. v. Johnson,* 440 F.3d 648, 655 n. 10 (4th Cir. 2006) ("[A] district court may *sua sponte* dismiss a complaint for failure to state a claim . . . .  Where the face of a complaint plainly fails to state a claim for relief, a district court has 'no discretion' but to dismiss it.") (citing 5A WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1357 (2d ed. 1990)); *see also Taylor v. Acxiom Corp.,* 612 F.3d 325, 340 (5th Cir. 2010) ("While the district court did dismiss *sua sponte* some defendants who did not join the motion to dismiss, there is no prejudice to the plaintiffs in affirming the judgment in its entirety because the plaintiffs make the same allegations against all defendants."); *Clinton Cmty. Hosp. Corp. v. S. Md. Med. Ctr.,* 374 F. Supp. 450, 453–54 (D. Md. 1974) (dismissing claim as to all defendants where arguments made

by one defendant for dismissal "apply equally to the [other] defendants . . . [and] have been exhaustively discussed by the plaintiff").

Notably, like § 1983, Article 24 "require[s] the defendant to be a state actor." *Anisimov v. Hosp. Partners, LLC*, CCB-09-2536, 2010 WL 723755, at *3 (D. Md. Feb. 24, 2010) (citing *Okwa v. Harper*, 360 Md. 161, 201, 757 A.2d 118, 140 (2000) ("Constitutional provisions like Articles 24 or 26 of the Maryland Declaration of Rights . . . are specifically designed to protect citizens against certain types of unlawful acts by government officials.")).  Accordingly, for the reasons that plaintiffs fail to state a claim pursuant to § 1983, Count III must also be dismissed. In addition, for the same reasons that leave to amend Count I would be futile, leave to amend Count III would also be futile.  Therefore, leave to amend Count III is also denied.

## C.    28 U.S.C. § 1332

Diversity jurisdiction is satisfied "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," and the litigation is between "citizens of different States." 28 U.S.C. § 1332(a)(1). As to diversity jurisdiction, the Motion challenges only whether plaintiffs have satisfied the amount-in-controversy threshold of $75,000.  *See* ECF 13 at 2.  For the reasons explained below, I agree with plaintiffs that they have satisfied the amount-in-controversy requirement.[13]

---

[13] As noted, one of the plaintiffs is a trust.  Both the Supreme Court and the Fourth Circuit have recently offered guidance as to how to determine the citizenship of a trust for purposes of diversity jurisdiction.

In *Americold Realty Trust v. Conagra Foods, Inc.*, ___ U.S. ___, 136 S. Ct. 1012 (2016), the Supreme Court said, *id.* at 1014: "While humans and corporations can assert their own citizenship, other entities take the citizenship of their members."  In particular, the Supreme Court considered "how to determine the citizenship of a 'real estate investment trust,'" *id.* at 1014, organized under Maryland law.  *Id.* at 1015-16.  It concluded that, under Maryland law, a real estate investment trust's "shareholders appear to be in the same position as the shareholders

As noted, Prestige maintains that "the amount in controversy between the diverse parties does not in fact exceed $75,000 as required by 28 USC §1332 . . . ." ECF 13 at 2.  In particular, Prestige avers, *id.*: "The amount in controversy is the amount of the retaining lien asserted by the Defendant under Maryland Law: $50,534.00 plus any damages provable by the Plaintiffs for the unlawful detainer of the personality."  Apparently in the alternative, Prestige submits, *id.* at 3 (capitalized in original):

> The amount in controversy alleged at over $100,000 might be appropriate if the Defendant had been alleged to have DESTROYED the subject vehicle. Instead, the value of deprivation of the Plaintiff of the possession of the vehicle would be easy to determine to calculate the actual amount in controversy, if the Plaintiffs had pleaded the lease payment that they had been collecting from the lessor, before his alleged default. That vehicle lease payment is the actual damage that the Plaintiffs needed to plead to property [sic] apprise the Court of is [sic] alleged damages and the appropriate amount in controversy for any §1332 analysis, but it

---

of a joint-stock company or the partners of a limited partnership . . . ." *Id.* at 1016.  Accordingly, the Supreme Court said that, "for purposes of diversity jurisdiction, [a real estate investment trust's] members include its shareholders." *Id.*  Notably, however, the Supreme Court also said, *id.*: "For a traditional trust . . . there is no need to determine its membership, as would be true if the trust, as an entity were sued."

Recently, in *Zoroastrian Ctr. & Darb-E-Mehr of Metro. Washington, D.C. v. Rustam Guiv Found. of New York*, ___ F.3d ___, 2016 WL 2343251(4th Cir. May 4, 2016), the Fourth Circuit observed that the Supreme Court's guidance in *Americold Realty Trust*, 136 S. Ct. 1012, "may generate as many questions as it answers." *Zoroastrian Ctr. & Darb-E-Mehr of Metro. Washington, D.C.*, 2016 WL 2343251, at *7.  In particular, the Fourth Circuit said, *id.*: "Putting aside the lack of a comprehensive definition of a 'traditional trust' the 'as would be true if the trust as an entity were sued' phrase seems open to several interpretations." *Id.*  "[D]oes the phrase mean that there is no need to determine entity membership for diversity purposes when a 'traditional trust' is sued as an entity?  Or do we read the statement to mean that a trust sued as an entity must prove entity membership because it is a separate legal person from the individual trustees?" *Id.*  The Fourth Circuit did not resolve these questions. *Id.*

At this juncture, however, in light of plaintiffs' supplemental briefing, which alleges that the citizenship of Daimler Trust's trustee and beneficiary are diverse from that of Prestige (ECF 11 at 2), I am satisfied that plaintiffs have adequately alleged diversity of citizenship.  In this regard, I also note that Prestige does not appear to contest citizenship.  *See* ECF 13 at 2 (questioning "the amount in controversy between the diverse parties . . .").

is lacking since Plaintiffs know that it would reveal that there is not $75,000 in controversy if properly pleaded.

Plaintiffs aver that "the Vehicle's value is the proper measure of the amount in controversy in this case." ECF 15 at 9. They contend that "the Vehicle is worth $137,576.00, is the 'object of the litigation,' and therefore exceeds the amount in controversy requirement." *Id.* In the alternative, plaintiffs submit, *id.* at 10: "Even if Prestige's $50,534.00 lien were somehow valid—which it is not—if Plaintiffs are able to prevent an extra-judicial sale extinguishing Plaintiffs' remaining property interest in the Vehicle, they would prevent a loss of approximately $87,042." *See* ECF 24 at 17.

"'It is elementary that the burden is on the party asserting jurisdiction to demonstrate that jurisdiction does, in fact, exist.'" *Cuccinelli,* 616 F.3d at 408 (citation omitted). As indicated, "[t]he 'burden of establishing subject matter jurisdiction is on . . . the party asserting jurisdiction." *Robb Evans & Assocs., LLC*, 609 F.3d at 362.  *Accord Hertz*, 599 U.S. at 95; *Zoroastrian Ctr. & Darb-E-Mehr of Metro. Washington, D.C.*, 2016 WL 2343251, at *5. Thus, when "a defendant challenges the existence of subject matter jurisdiction in fact, the plaintiff bears the burden of proving the truth of such facts by a preponderance of the evidence." *United States ex rel. Vuyyuru,* 555 F.3d at 347.

With respect to the amount-in-controversy requirement of the diversity jurisdiction statute, the Supreme Court has articulated two standards that are seemingly in tension. On the one hand, in *Saint Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283 (1938), the Court said: "The rule governing dismissal for want of jurisdiction . . . is that . . . the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear *to a legal certainty* that the claim is really for less than the jurisdictional amount to justify dismissal." *Id.* at

288–89 (emphasis added) (internal footnotes omitted). In other words, "if, from the face of the pleadings, it is apparent, *to a legal certainty,* that the plaintiff cannot recover the amount claimed . . . , the suit will be dismissed." *Id.* at 289 (emphasis added).

On the other hand, in *McNutt v. General Motors Acceptance Corp. of Indiana,* 298 U.S. 178 (1936), the Supreme Court considered a complaint that was "destitute of any appropriate allegation as to jurisdictional amount save the general allegation that the matter in controversy exceeds $3,000," which was then the statutory amount-in-controversy threshold, and the "particular allegations" of the complaint shed no further "light upon that subject." *Id.* at 181. In that circumstance, the Court said that the plaintiff "must allege in his pleading *the facts* essential to show jurisdiction." *Id.* at 189 (emphasis added). The Court continued: "The authority which the statute vests in the court to enforce the limitations of its jurisdiction *precludes the idea that jurisdiction may be maintained by mere averment* . . . . If [the plaintiff's] allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof." *Id.* (emphasis added).

In *Momin v. Maggiemoo's International, LLC,* 205 F. Supp. 2d 506 (D. Md. 2002), Judge Blake of this court observed that, "[i]n determining whether an amount in controversy is sufficient to confer jurisdiction," courts have applied "one of two legal standards depending on whether the damages are specified or unspecified in the complaint," *id.* at 509, thereby harmonizing the teachings of *McNutt* and *Saint Paul Mercury*.[14]

---

[14] *Momin* arose in the context of removal, and thus the burdens were reversed: the defendant, as the party asserting diversity jurisdiction, bore the burden to establish jurisdiction, and so the defendant sought to controvert the plaintiff's claim that the amount in controversy was *lower* than the jurisdictional threshold. However, there is no reason to conclude that Judge Blake's analysis is any less valid in a situation in which the plaintiffs' assertion of jurisdiction is challenged by the defendant.

Under the first standard, "[w]here a plaintiff claims a *specific amount* in damages," greater than the $75,000 threshold, the opponent of jurisdiction must controvert the plaintiff's assertion to a "'legal certainty.'" *Id.* (emphasis added) (citation omitted). The Fourth Circuit stated in *JTH Tax, Inc. v. Frashier,* 624 F.3d 635 (4th Cir. 2010): "If the plaintiff *claims a sum* sufficient to satisfy the statutory requirement, a federal court may dismiss only if 'it is apparent, *to a legal certainty,* that the plaintiff cannot recover the amount claimed.'" *Id.* at 638 (emphasis in *JTH Tax*) (citation omitted). In other words, a jurisdictional challenge to a specifically alleged amount in controversy will fail if *"a fact finder could legally conclude,* from the pleadings and proof adduced to the court before trial, that the damages that the plaintiff suffered are greater than $75,000." *Kopp v. Kopp,* 280 F.3d 883, 885 (8th Cir. 2002)(emphasis added). In that circumstance, a defendant "seeking dismissal of [a] diversity action[ ] for lack of a sufficient amount in controversy, must . . . shoulder a heavy burden"; the opponent of jurisdiction "must show 'the legal impossibility of recovery' to be 'so certain as virtually to negative the plaintiff's good faith in asserting the claim.'" *JTH Tax,* 624 F.3d at 638 (citation omitted).

However, where "a plaintiff's complaint does not allege a specific amount in damages," a different standard applies: the proponent of jurisdiction must "prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum." *Momin,* 205 F. Supp. 2d at 509-10. As Judge Blake explained, "[i]n such cases, '[a] lower burden of proof is warranted because there is simply no estimate of damages to which a court may defer.'" *Id.* at 510 (citation omitted). This is consistent with the "well-pleaded complaint" rule, under which the facts showing the existence of subject matter jurisdiction "must be affirmatively alleged in the

complaint." *Pinkley, Inc. v. City of Frederick,* 191 F.3d 394, 399 (4th Cir. 1999) (citing *McNutt*); *accord El v. AmeriCredit Fin. Servs., Inc.,* 710 F.3d 748, 752 (7th Cir. 2013) ("The fact that the plaintiff *alleged* an amount in controversy in excess of $75,000 . . . does not establish that this is the amount in controversy.") (emphasis in original).

Here, the first standard applies. The crux of the Complaint is that Prestige is in unlawful possession of a vehicle that is owned by Daimler Trust and in which Daimler Title holds a lien. *See* ECF 1 ¶¶ 10, 22-23. The Complaint alleges that the vehicle is worth $137,576. *Id.* ¶¶ 10, 43. Plaintiffs seek, *inter alia*, the return of the vehicle. *Id.* ¶ 114.

Prestige shoulders the burden of demonstrating that the amount in controversy is less than $75,000. It has not met its burden.

To be sure, as Prestige suggests (*see* ECF 13 at 2-3), *if* the vehicle is returned and *if* the vehicle's alleged value has not been extinguished through the modifications that Prestige has purportedly performed, it is conceivable that, *if* successful, plaintiffs may be entitled to recover money damages of less than $75,000. Yet, prognostication about possible damages does little to rebut the core allegation in the Complaint that Prestige is in possession of $137,576 worth of plaintiffs' property and will not give it back.

Accordingly, I am persuaded that the Complaint adequately alleges an amount in controversy of more than $75,000 and that diversity jurisdiction exists, pursuant to 28 U.S.C. §1332.

### III. Conclusion

For the foregoing reasons, I will grant the Motion (ECF 13) in part and deny it in part. Count I and Count III must be dismissed because plaintiffs fail to state a claim. Pursuant to 28

U.S.C. § 1332, however, the Court has subject matter jurisdiction as to Count II, Count IV, and Count V, based on diversity.

A separate Order follows, consistent with this Memorandum.


Date: June 7, 2015                                      _____/s/_____
                                                        Ellen Lipton Hollander
                                                        United States District Judge