IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAIMLER TRUST, et al,                          *

      Plaintiffs                            *

v.                                             *          Civil Case No. 16-00544-JMC

PRESTIGE ANAPOLIS, LLC,                        *

      Defendant.                            *

                * * * * * * *

## MEMORANDUM OPINION

Plaintiffs, Daimler Trust and Daimler Title Co. ("Daimler Title") (collectively, "Plaintiffs"), are the owners/lessors of a 2016 Mercedes-Benz AMG GT S (the "Vehicle").[1] The dispute arose when Defendant, Prestige Annapolis, LLC ("Prestige"), asserted a "garageman's lien" against the Vehicle based on modifications allegedly performed on the Vehicle by Prestige purportedly at the instruction of the Vehicle's lessee for which Prestige was not paid. On February 25, 2016, Plaintiffs filed a Complaint in this Court against Prestige alleging that Prestige, "act[ing] under the color of state law," unlawfully deprived Plaintiffs of their property interests in the Vehicle by failing to turn over possession of the Vehicle upon demand for it, "impress[ing] a nonconsensual (supposed) lien" on the Vehicle, and scheduling an "extra-judicial sale of the Vehicle" to enforce the lien. (COMPLAINT, ¶ 10-11; ECF No. 1). That Complaint contains five counts: violation of Plaintiffs' due process rights under the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983 ("§ 1983") (Count I); replevin (Count II); deprivation of property without due process of law, in violation of Article 24 of the Maryland

---

[1] That Vehicle was equipped with the vehicle identification number of WDDYJ7JA2GA001175. (WALTER DECLARATION, ¶ 2; ECF No. 48).

Declaration of Rights (Count III); conversion (Count IV); and declaratory relief (Count V). (COMPLAINT, ¶¶ 44-106).

On March 16, 2016, Plaintiffs sought the release of the Vehicle from Prestige's possession by filing a "Motion to Release Motor Vehicle Upon Court Approval of Bond and Request for Issuance of Show Cause Order." (ECF No. 9). The next day, the Court issued a show cause order as to why the Vehicle should not be released to Plaintiffs. (ECF No. 10). On March 31, 2016, before that show cause order was resolved, Prestige filed a Motion to Dismiss. (ECF No. 13). Judge Hollander granted that Motion to Dismiss as to Courts I and III due to a lack of showing of "state action," but denied the motion as to the remaining counts: Counts II (replevin), IV (conversion), and V (declaratory relief). (ECF Nos. 25, 26). Thereafter, the parties resolved the show cause order through a "Stipulation of Release of the Vehicle and Filing of the Bond," which this Court approved on June 27, 2016. (ECF Nos. 29, 30). Through this mechanism, possession of the Vehicle was returned to Plaintiffs in exchange for Plaintiffs' posting of a bond equivalent to double the amount of the charge claimed by Defendant. The parties then consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c) and Local Rule 301.4 (D. Md. 2016). (ECF Nos. 33-36), and Defendant filed its Answer to Plaintiffs' Complaint on July 11, 2017. (ECF No. 37).

Now pending before the Court is Plaintiffs' Motion for Partial Summary Judgment and Plaintiffs' Motion to Strike. (ECF Nos. 46, 52). After reviewing these motions and their related responses, replies, and supplementations, (ECF Nos. 47-51, 54-55), the Court finds that no hearing is necessary. Loc. R. 105.6 (D. Md. 2016). For the reasons that follow, Plaintiffs' Motion to Strike, (ECF No. 52), is GRANTED, and Plaintiffs' Motion for Partial Summary Judgment, (ECF No. 46), is GRANTED. This leaves the only unresolved issue as what damages

flow, if any, from Prestige's conversion of the Vehicle. A separate order shall follow this memorandum opinion.

## I.    Motion to Strike

The Court must first address Plaintiffs' Motion to Strike because the resolution of that motion will determine the scope of the factual information and legal arguments that the Court can properly consider in its analysis of Plaintiffs' Motion for Partial Summary Judgment.

Following the parties' consent to proceed before a magistrate judge, the Court issued the first scheduling order in this case on August 2, 2016. (ECF No. 38). That order set the discovery, requests for admission, and dispositive pretrial motions deadlines.[2] In late September and early October of 2016, Plaintiffs filed various requests for extensions of time to file discovery disclosures. (ECF Nos. 40, 41). The Court issued an amended scheduling order on October 4, 2016, that, among other things, responded to those requests by extending the deadlines for discovery to February 6, 2017, requests for admission to February 20, 2017, and dispositive pretrial motions to March 6, 2017. (ECF No. 42).

In a status report filed on February 16, 2017, Plaintiffs requested, with the consent of Prestige,[3] that the deadline for dispositive pretrial motions be moved to March 31, 2017 in order for Prestige to have thirty (30) days to respond to Plaintiffs' requests for admission, as required by Federal Rule of Civil Procedure 36. (ECF No. 43). The Court granted that request, setting March 31, 2017 as the new deadline for filing pretrial dispositive motions. (ECF No. 44).

---

[2] Specifically, that original scheduling order set December 23, 2016 as the discovery deadline, January 6, 2017 as the deadline for requests for admission, and January 20, 2017 as the dispositive pretrial motions deadline.

[3] That request was made by Plaintiffs in their status report, but it was done so with the consent of Prestige.

On February 20, 2017, Plaintiffs' counsel emailed[4] Defense counsel their requests for admission, asking Prestige to admit or deny twenty-nine (29) different statements concerning the Vehicle in question, Prestige's purported ownership interest in the Vehicle, dates and circumstances surrounding Prestige's possession of the Vehicle, communications between Prestige and the lessee, alterations or repairs made to the Vehicle, and other issues pertinent to the claims listed in the Complaint. (ECF No. 47-1). As will be discussed below, pursuant to Federal Rule of Civil Procedure 36, any responses from Defendant to those requests was due on March 22, 2017. However, no responses were received.

On March 31, 2017, Plaintiffs filed their pending Motion for Partial Summary Judgment,[5] in which they rely, in part,[6] on unanswered requests for admission (now deemed admitted pursuant to Federal Rule of Civil Procedure 36) as support for their argument that there is no genuine dispute of material fact in this case and that they are entitled to judgment as a matter of law. Defense counsel ultimately emailed Plaintiffs' counsel Prestige's answers to the requests for admission on April 7, 2017, sixteen (16) days after they were due and seven (7) days

---

[4] There is some dispute over whether the requests for admission were also properly mailed to counsel for Prestige. Plaintiffs state that on February 20, 2017 a "courtesy copy was mailed first-class, postage prepaid to counsel for Prestige." (ECF No. 52, page 3). However, Prestige contends that no such paper copy was received. (ECF No. 51, page 1). This dispute is not critical because both parties acknowledge that an electronic version was sent and received on the same date.

[5] The Court notes that the title of the motion as it appears on the docket is "Corrected Motion for Partial Summary Judgment." (ECF No. 46).

[6] In addition to the requests for admission, Plaintiffs also relied on various materials for their factual assertions that are docketed in conjunction with their motion. Those materials, which are cited throughout this opinion, include: (1) an "expert report" from Mr. Thomas Perry, a "Master Certified Mercedes Benz technician," who inspected the Vehicle and concluded that it is in "original, factory condition, and contains only original equipment manufacturer ("OEM") parts" (ECF No. 47-2); (2) a "Notice of Sale of Motor Vehicle to Satisfy a Lien" (ECF No. 47-3); (3) a declaration in support of summary judgment from Anita Walter, the "Collections Exceptions Specialist handling this matter on behalf of Mercedes Benz Financial Services, USA, LLC" (ECF No. 48); (4) the Lease Agreement between the automobile dealership and the Lessee ("the Lease Agreement") (ECF No. 48-1); and (5) the Certification of Title, showing Daimler Trust as owner of the Vehicle and Daimler Title as the first lienholder (ECF No. 48-2).

after Plaintiffs had already filed their Motion for Partial Summary Judgment based, in part, on Prestige's prior lack of response. (ECF No. 51-3).

A week later, on April 14, 2017, Prestige filed a timely Response in Opposition to Plaintiffs' Motion for Partial Summary Judgment, (ECF No. 49), the predominant thrust of which was that the Court should dismiss the case for want of subject matter jurisdiction because the amount-in-controversy did not exceed $75,000. No reference was made to Prestige's belated response to Plaintiffs' requests for admission in that response. Plaintiffs filed their timely reply on April 28, 2017, (ECF No. 50), in which they responded to Prestige's jurisdictional arguments, reiterated their own arguments from the Motion for Partial Summary Judgment, and pointed out that Prestige did not dispute or otherwise address the factual assertions or legal analysis set forth in Plaintiffs' motion.

On May 2, 2017, Prestige, without the Court's or Plaintiffs' consent, filed a Surreply, or as Prestige titled it: a "Reply to Memorandum in Opposition to Motion to Reconsider Subject Matter Jurisdiction and Omnibus Supplemental Response to Motion for Partial Summary Judgment, Statement on Disputed Facts and Motion to Allow Responses to Request for Admissions." (ECF No. 51). In that filing, Prestige seeks permission from the Court to allow its late answers to Plaintiffs' requests for admission, and then, for the first time, responds to the merits of Plaintiffs' Motion for Partial Summary Judgment, using as factual support both Prestige's late answers to the requests for admission as well a detailed affidavit, dated May 1, 2017, from Mr. Omid Shaffaat, the "sole member of Defendant Prestige Annapolis LLC." (ECF No. 51-2, 51-4). Prestige's Surreply also reiterates support for its lack of subject matter jurisdiction argument.

In response, Plaintiffs filed a Motion to Strike Prestige's Surreply and all accompanying documents that were docketed with it, including the answers to the requests for admission and Mr. Shaffaat's affidavit. (ECF No. 52). Prestige filed a timely Response to that Motion to Strike on May 23, 2017. (ECF No. 54). The Court issued a paperless order noting that it would reserve judgement on Plaintiffs' motion but that it would grant Plaintiffs leave to file a substantive response to any new issues and arguments raised in Prestige's Surreply. (ECF No. 53). Plaintiffs filed their timely substantive response on May 24, 2017. (ECF No. 55).

In their Motion to Strike, Plaintiffs provide two separate justifications for striking Prestige's Surreply and accompanying materials. They contend that (1) Prestige failed to comply with Federal Rule of Civil Procedure 36 ("Rule 36") by attempting to include late answers to the requests for admission in support of its Surreply, and that (2) Prestige failed to comply with the Local Rules of this Court by not seeking the Court's permission to file a Surreply and by setting forth new arguments in the Surreply that should have been raised in Prestige's original response to the motion for partial summary judgment.

<u>Federal Rule of Civil Procedure 36</u>

"Requests for admissions are a discovery device governed by Rule 36 of the Federal Rules of Civil Procedure." <u>Webb v. Green Tree Servicing, LLC</u>, No. CIV.A. ELH-11-2105, 2013 WL 5442423, at *15 (D. Md. Sept. 30, 2013). This Rule "allows any party to serve on another party requests to admit the truth of facts, the application of law to fact, or opinions relating to matters within the scope of discovery." <u>Ball-Rice v. Bd. of Educ. of Prince George's Cty.</u>, No. CIV.A. PJM-11-1398, 2013 WL 2299725, at *2 (D. Md. May 24, 2013) (citing Fed.R.Civ.P. 36(a)(1)). The Rule's purpose, as has often been said, is "to 'narrow the array of issues before the court, and thus expedite both the discovery process and the resolution of the

litigation.'" Id. (citing Adventis, Inc. v. Consolidated Prop. Holdings, Inc., 124 F. App'x 169, 172 (4th Cir.2005)).

Rule 36(a)(1) provides: "A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1)[7] relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents." (Footnote added). In responding to a request for admission, "the answering party must either admit the matter requested or, 'if a matter is not admitted, ... specifically deny it or state in detail why the answering party cannot truthfully admit or deny it.'" Webb, 2013 WL 5442423, at *15 (citing Fed.R.Civ.P. 36(a)(4)) (internal brackets omitted, footnote in the original). Furthermore, this Rule permits "a party to admit a matter in part and deny it in part or plead a lack of knowledge or information under certain circumstances." Id. The effect of an admission is specified in Rule 36(b), which states:

> A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended. Subject to Rule 16(e),[8] the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits. An admission under this rule is not an admission for any other purpose and cannot be used against the party in any other proceeding.

Webb, 2013 WL 5442423, at *15 (citing Fed.R.Civ.P. 36(b)) (footnote in the original).

---

[7] "Fed.R.Civ.P. 26(b)(1) establishes the scope of civil discovery in a federal action. It provides: Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C) [which authorizes the court to limit discovery on the basis of redundancy, availability from another source or prior opportunity, or cost/benefit considerations]." Webb v. Green Tree Servicing, LLC, No. CIV.A. ELH-11-2105, 2013 WL 5442423, at *15, fn. 34 (D. Md. Sept. 30, 2013).

[8] "Fed.R.Civ.P. 16(e) provides that a court may modify the [pretrial] order issued after a final pretrial conference only to prevent manifest injustice." Webb, 2013 WL 5442423, at *16, fn. 35 (internal quotations omitted).

Most pertinent for present purposes is Rule 36(a)(3), which "establishes the time to respond to a request for admissions and the consequence of an untimely response." Id. That portion of Rule 36 states:

> A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney. A shorter or longer time for responding may ... be ordered by the court.[9]

Id. (citing Fed.R.Civ.P. 36(a)(3) (footnote in the original).

Here, there is no question that Prestige's responses to Plaintiffs' requests for admission were late. On February 20, 2017, Plaintiffs emailed their requests to Defense counsel. (ECF No. 47-1). Under Rule 36, the thirty (30) day deadline for responding to these requests was March 22, 2017, making Prestige's April 7th responses sixteen (16) days past due. Therefore, the question in not whether these responses were late, but whether the Court should nonetheless accept them.

Whether or not to prohibit untimely responses to requests for admission, and in turn deem those requests as admitted under Rule 36, is a matter committed to this Court's discretion. Donovan v. Porter, 584 F.Supp. 202, 208 (D.Md.1984). This Court and the Fourth Circuit have stated that late answers to requests for admission may be accepted "when such an amendment of the admission will not prejudice the other party," Donovan, 584 F. Supp. at 208, and where there are "compelling circumstances" justifying the untimeliness of the answer. Metpath, Inc. v. Modern Med., 934 F.2d 319 (4th Cir. 1991) (citing Moosman v. Joseph P. Blitz, Inc., 358 F.2d 686, 688 (2d Cir.1966), where the Second Circuit stated that "[u]nder compelling circumstances the District Court may allow untimely replies to avoid the admission").

---

[9] "Rule 36(a)(3) also allows the parties to stipulate among themselves to a shorter or longer time for responding to a request for admission. That provision is not relevant here." Webb, 2013 WL 5442423, at *16, fn. 36.

Furthermore, "unanswered requests for admission can serve as the basis for summary judgment." Vales v. Preciado, 809 F.Supp.2d 422, 426 (D.Md.2011) ("'unanswered requests for admissions may properly serve as a basis for summary judgment and with a failure to make a timely response, the truth of the matter contained in the request for admission is conclusively established and may serve as the basis for the court's consideration of a motion for summary judgment'") (quoting Donovan, 584 F.Supp. at 207–08); see also Batson v. Porter, 154 F.2d 566, 568 (4th Cir.1946) (where the Fourth Circuit held that unanswered requests for admissions are admitted and may support summary judgment, "unless a sworn statement is filed in which they are specifically denied or specific reasons are given why they cannot be truthfully admitted or denied"); see also J & J Sports Prods., Inc. v. Mumford, No. CIV.A. DKC 10-2967, 2012 WL 1409588, at *3 (D. Md. Apr. 20, 2012). Indeed, in a similar context, this Court has previously warned that under the requirements of Rule 36(a), "the answering party that objects to a request for admissions does so at its own peril," and that the "[f]ailure to adhere to the plain language of this [Rule] requires that the fact in question be admitted." Poole ex rel. Elliott v. Textron, Inc., 192 F.R.D. 494, 499 (D. Md. 2000) (citing Asea, Inc. v. S. Pac. Transp. Co., 669 F.2d 1242, 1245 (9th Cir.1981)).

The Court recognizes that, in the posture of summary judgment, late responses should not be summarily rejected. See Donovan, 584 F. Supp. at 208 ("Courts are particularly responsive to allowing late answers to requests for admission when summary judgment is involved. It does not further the interests of justice to automatically determine the issues of a lawsuit and enter summary judgment against a party because a deadline is missed") (internal citations omitted). Nonetheless, given the resulting prejudice to Plaintiffs, the ample notice of when the responses were due, the lack of a compelling reason justifying their untimeliness, and the other discovery

problems addressed in later sections of this opinion, the Court will not accept Defendant's late responses.

First, Plaintiffs expended considerable time and effort crafting their Motion for Partial Summary Judgment, in which they rely, in part, on factual statements contained in the requests for admission that Prestige did not confirm or deny, and thus Plaintiffs properly believed were admitted under Rule 36. Even though Plaintiffs did eventually receive Prestige's answers to the requests on April 7, 2017, before submitting their Reply, Prestige's Response in Opposition to the Motion for Partial Summary Judgment did not challenge any of Plaintiff's factual or legal assertions (the response merely rehashed a jurisdictional argument already addressed by the Court). Nor did Prestige ever challenge those factual and legal assertions within the time period allowed by this Court, as will be discussed below. Accordingly, neither Plaintiffs' Motion for Partial Summary Judgment nor their Reply brief had any reason to address the objections or denials that Defendant gave in its late answers to the requests for admission.

Second, Prestige got the opportunity of seeing exactly how Plaintiffs used the requests of admission in support of Plaintiffs' summary judgment arguments before forwarding responses crafted with the benefit of that strategic insight and affording Prestige an unfair advantage.

Third, Prestige should have been aware of the deadline for answering the requests for admission, along with the consequences for not doing so. Not only is Rule 36 clear on this matter, but Prestige was advised of this deadline at various points in this litigation. In fact, included in the requests that were emailed to Prestige was a detailed "instructions" section, which provided a detailed and accurate summary of Prestige's rights and obligations under Rule 36. (ECF No. 47-1). Moreover, Plaintiffs' status report, which the Court construed as a *consent*

motion to modify the scheduling order,[10] requested the Court move the pretrial motions deadline so that Defendant would have thirty (30) days to respond to Plaintiffs' requests for admission as required under Rule 36. (ECF No. 43).

Defense counsel concedes that it received Plaintiffs' email containing the requests for admission on the evening of February 20, 2017 and then forwarded the requests to Mr. Shaffaat the next day. (ECF No. 51, ¶ 1-2). Prestige acknowledges that it "does not have a detailed explanation as to why its e-mail communication from counsel [to Mr. Shaffaat] was not received, but the delay in responding was because the requests were not received by [Mr. Shaffaat] electronically." (ECF No. 51, ¶ 3). The Defense then deflects its own error onto Plaintiffs, suggesting that this Court ought to overlook this untimeliness because "this case [should] be decided on the merits and not on a literal late night procedural maneuverings[11] and service of a Request for Admissions." (ECF No. 51, ¶ 5).

The Court does not find this explanation to be in any way compelling. Not only did the Court not receive a request for extension of time, but as noted above, by waiting until it had Plaintiffs' Motion in hand—with its detailed factual roadmap of Plaintiffs' theory of the case— before submitting its late responses, Prestige benefitted from its own "procedural maneuverings" to the prejudice of Plaintiffs. It is also noteworthy that Prestige did not at all rely on its untimely answers in its initial Response in Opposition to Plaintiffs' Motion but waited until after Plaintiffs' Reply before asserting any factual rebuttal. Prestige also does not explain why, given Defense Counsel's timely receipt of the requests, Prestige should be excused for failing to file a

---

[10] Supra note 3.

[11] The Court recognizes that the requests for admission were emailed to Prestige at 11:16 p.m. on February 20, 2016. (ECF No. 51-1). However, there is no evidence to suggest that this evening submission was done in bad faith, that these requests were submitted late, or that the timing of the submission was somehow a cause of Prestige's sixteen (16) day delay in answering the requests.

timely response or otherwise ask for an extension. Accordingly, the Court will not accept the late answers to the requests for admission and will consider those requests admitted for purposes of ruling on the Motion for Partial Summary Judgment.

    <u>Local Rules</u>

    In addition to the untimeliness of Prestige's answers to the requests for admission under Federal Rule Civil Procedure 36, Prestige's "Reply to Memorandum in Opposition to Motion to Reconsider Subject Matter Jurisdiction and Omnibus Supplemental Response to Motion for Partial Summary Judgment, Statement on Disputed Facts and Motion to Allow Responses to Request for Admissions," runs afoul of this Court's Local Rules and principles regarding surreplies and briefing procedures.

    It is not uncommon for this Court to, in its discretion, to strike filings for failure to comply with the Local Rules. <u>Farwell v. Story</u>, No. CIV.A. DKC 10-1274, 2010 WL 4963008, at *10 (D. Md. Dec. 1, 2010) ("Compliance with the Local Rules is not optional"); see also <u>Air Line Pilots Ass'n v. Precision Valley Aviation, Inc.</u>, 26 F.3d 220, 224 (1st Cir. 1994) ("District courts enjoy broad latitude in administering local rules," and "[i]n the exercise of that discretion, district courts are entitled to demand adherence to specific mandates contained in the rules") (internal citations omitted). This is particularly the case where such filings are procedurally improper, see e.g. <u>Chubb & Son v. C & C Complete Servs., LLC</u>, 919 F. Supp. 2d 666, 679 (D. Md. 2013) ("The Court grants [defendant's] Motion to Strike Surreply. Plaintiffs did not file their surreply in conformity with the Local Rules, surreplies are disfavored in this District, and the surreply would not alter the Court's analysis"), or where such filings are untimely, see e.g. <u>LBCMT 2007-C3 Urbana Pike, LLC v. Sheppard</u>, No. CIV. JKB-12-3056, 2015 WL 1880083, at

*1 (D. Md. Apr. 22, 2015) ("The motion to strike will be granted based upon the lack of a request by [defendant] for late filing of his reply and based upon the absence of good cause").

"In general, parties are not permitted to file surreplies." MTB Servs., Inc. v. Tuckman-Barbee Const. Co., No. CIV.A. RDB-12-02109, 2013 WL 1224484, at *6 (D. Md. Mar. 26, 2013) (citing Local Rule 105.2(a) (D.Md.2011)).[12] However, in its discretion, the Court may permit surreplies where "the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." Marshall v. Capital View Mut. Homes, No. CIV. RWT-12-3109, 2013 WL 3353752, at *2–3 (D. Md. July 2, 2013) (internal citations and quotations omitted). Nonetheless, even where this discretion is exercised, "[s]urreplies are allowed only pursuant to a court order," Marshall, 2013 WL 3353752, at *2–3 (citing Local Rule 105.2(a) (D.Md.2011))[13]; see also Dwonzyk v. Baltimore Cty., Md., 328 F. Supp. 2d 572, 578 (D. Md. 2004) ("Given that the Plaintiff failed to seek leave of court, the surreply will not be considered by this Court") (internal citations omitted), and "[a] motion for leave to file a surreply may be denied when the matter addressed in the reply is not new." Marshall, 2013 WL 3353752, at *2–3 (internal citations and quotations omitted).

Here, Prestige's motion, which the Court construes as a surreply, presents two problems in light of the above rules and principles. First, Prestige never sought permission of the Court to file the motion, which is clearly required under the Local Rules and this Court's guidance relating to surreplies. Dwonzyk, 328 F. Supp. 2d at 578 ("Unless otherwise ordered by the court, surreply memoranda are not permitted to be filed") (citing Local Rule 105.2(a)). Second, even if

---

[12] The current version of Local Rule 105.2(a) (D. Md. 2016) reads as follows:

> All motions must be filed within deadlines set by the Court. Unless otherwise ordered by the Court, all memoranda in opposition to a motion shall be filed within fourteen (14) days of the service of the motion and any reply memoranda within fourteen (14) days after service of the opposition memoranda. Unless otherwise ordered by the Court, surreply memoranda are not permitted to be filed.

[13] Supra note 12.

Prestige had properly requested leave to file a surreply, such a request would have been denied because Plaintiffs' reply did not contain any new information or arguments from its motion for summary judgment, leaving Prestige no need to file a surreply. <u>Marshall</u>, 2013 WL 3353752, at *2–3 ("A motion for leave to file a surreply may be denied when the matter addressed in the reply is not new") (internal citations and quotations omitted).

Prestige, however, asks this Court to construe its filing not as a surreply, but instead "as a motion to request the court to allow the admissions responses and to consider the supplemental materials which are potentially responsive to the Motion for [Partial] Summary Judgment." (ECF No. 54, page 1). Prestige has appended to that filing a detailed affidavit from its principal, Mr. Shaffaat, outlining (apparently for the first time) a chain of events that form the basis for its defense.  Notably, that affidavit was signed May 1, 2017, a few days after Plaintiffs' Motion for Partial Summary Judgment, with its detailed factual roadmap, had been fully briefed.  It is, to say the least, puzzling as why this information did not come to light during the discovery phase of this case and only surfaced after Prestige's initial Response in Opposition when Plaintiff's motion was otherwise ripe. Having offered no compelling explanation, the Court will deny Prestige's request. Accordingly, for the reasons stated above, the Court will grant Plaintiffs' Motion to Strike, and as a result, the Court will not consider Prestige's Surreply or its related materials, in the resolution of Plaintiffs' Motion for Partial Summary Judgment.[14]

---

[14] The Court also notes that Federal Rule of Civil Procedure 56(e) also permits this Court to consider uncontroverted facts in the evaluation of Plaintiffs' Motion for Summary Judgment, as Prestige's response in opposition did not refute any of the factual assertions made in Plaintiffs' motion. See <u>Custer v. Pan Am. Life Ins. Co.</u>, 12 F.3d 410, 416 (4th Cir. 1993) ("Although the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the moving party must still show that the uncontroverted facts entitle the party to "a judgment as a matter of law." The failure to respond to the motion does not automatically accomplish this. Thus, the court, in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law. This duty of the court is restated in section (e) of the rule, providing, 'if the adverse party does not so respond, summary judgment, *if appropriate*, shall be entered against the adverse party'") (citing Fed.R.Civ.P. 56(e)) (emphasis in the original).

## II.      Motion for Partial Summary Judgment

In turning to the underlying motion, the Court will first address Plaintiffs' arguments set forth in their Motion for Partial Summary Judgment, and then will discuss Prestige's argument for lack of subject matter jurisdiction.

In April of 2015, William Betteridge (the "Lessee") leased the Vehicle, that is the subject of the present dispute, from "Mercedes Benz of Annapolis" (a dealership in Annapolis, Maryland), pursuant to a "closed-end vehicle lease agreement" (the "Lease Agreement"). (COMPLAINT, ¶ 19), (REQUESTS FOR ADMISSION, 3; ECF No. 47-1), (WALTER DECLARATION, ¶ 2; ECF No. 48), (LEASE AGREEMENT, page 2; ECF No. 48-1). Title to that Vehicle was issued on June 2, 2015 in the name of Daimler Trust, with Daimler Title listed as the first and only lien holder. (CERT. OF TITLE, 1; ECF No. 48-2). Lessee is not, nor was he at any point in time, the owner of the Vehicle.[15] (WALTER DECLARATION, ¶ 2-4), (REQUESTS FOR ADMISSION, ¶ 5) (CERT. OF TITLE, 1).

At some point in June or July of 2015, Lessee requested that RENN-Tech, a company based in Florida, take possession of the Vehicle for the "production and installation of a non-standard model ECU-chip." (REQUESTS FOR ADMISSION, ¶ 14-16). Apparently, an "ECU-chip" interacts with the Vehicle's on-board engine computer and modifies performance. Ultimately, however, that ECU chip was never produced or installed in the Vehicle. (REQUESTS FOR ADMISSION, ¶¶ 14-16), (EXPERT REPORT, pages 1-2).

On September 11, 2015, Lessee requested that Prestige to take possession of the Vehicle from RENN-Tech, make certain performance modifications, and begin showing the Vehicle to potential buyers for purposes of selling it, even though Prestige knew that Lessee was not the owner of the Vehicle. (REQUESTS FOR ADMISSION, ¶¶ 6, 8-9). Shortly thereafter, Lessee defaulted

---

[15] As more fully discussed below, being the legal owner does not necessarily resolve the question of whether a lessee can be an "owner" pursuant to Maryland's "garageman's lien" statute, however that question need not be resolved in the context of the present motion.

under the Lease Agreement on September 25, 2015, having failed to make his monthly lease payments.[16] (WALTER DECLARATION, ¶ 5). Plaintiffs claim that as a result of this default, they were entitled to take possession of the Vehicle at that time. (WALTER DECLARATION, ¶ 6). However, they did not immediately do so.

On November 20, 2015, Mr. James Betteridge, Lessee's father, notified Plaintiffs that his son could no longer make his payments under the Lease Agreement and that the Vehicle would be returned. (WALTER DECLARATION, ¶ 7). A few weeks later, on December 1, 2015, James Betteridge notified Plaintiffs that the Vehicle was in Prestige's possession. (WALTER DECLARATION, ¶ 8).

On December 28, 2015, Plaintiffs called Prestige about retaking possession of the Vehicle. (WALTER DECLARATION, ¶ 9). Prestige informed Plaintiffs that the Vehicle would not be turned over unless Plaintiffs paid $11,730.00 for modifications that Prestige alleged it performed on the Vehicle presumably at Lessee's request. (WALTER DECLARATION, ¶ 9). Prestige asserted that it was entitled to detain the Vehicle for purposes of satisfying a lien for such charges. (WALTER DECLARATION, ¶ 10). Around this time, Prestige provided Plaintiffs with an "invoice," dated December 22, 2015, which listed a total amount due of $11,730.00. (DEC. 2015 INVOICE; ECF No. 47-1, Ex. A). Any such charges, Plaintiffs state, were "impressed by Defendant without the knowledge, consent or authority of Plaintiffs, and Plaintiffs did not grant permission, consent, or authority for any modifications to be done to the Vehicle." (REQUESTS FOR ADMISSION, ¶ 19-20).

On January, 8, 2016, Prestige requested Nationwide Lien & Recovery, Inc. ("Nationwide") to sell the Vehicle in order to enforce Prestige's asserted lien against the Vehicle,

---

[16] Ms. Walter's declaration states that "[n]o payments have been made after September 14, 2015." (WALTER DECLARATION, ¶ 5).

which Prestige now claimed to be in the amount of $49,084. (PLAINTIFFS' STATEMENT OF FACTS, ¶ 18; ECF No. 46-1), (NOTICE OF SALE). Nationwide apparently moved forward with that request as a copy of the "Notice of Sale" shows that the Vehicle was scheduled to be auctioned on March 2, 2016, "pursuant to subtitle 16-202 to 16-207 of the Maryland Commercial Law Statutes for the purpose of satisfying the mechanic lien to [Prestige]."[17] Plaintiffs apparently were informed of this sale by Nationwide on February 19, 2016 when they received a second invoice from Prestige dated February 2, 2016, this time listing the amount due as $49,084.00. (FEB. 2016 INVOICE; ECF No. 47-1, Ex. C) (PLAINTIFFS' STATEMENT OF FACTS, ¶ 20), (REQUESTS FOR ADMISSION, ¶ 23). Additionally, Plaintiffs note that during discovery Prestige produced yet a third invoice, dated September 11, 2016, which asserted that the amount due was $35,644.00. (SEPT. 2016 INVOICE; ECF No. 47-1, Ex. B).[18] Plaintiffs requested that they be permitted to inspect the Vehicle, however, Defendant refused to allow Plaintiffs' professional inspector to have access to it. (PLAINTIFFS' COUNSEL CERTIFICATION, ¶ 7; ECF No. 47).

As noted above, Plaintiffs filed their Complaint against Prestige, claiming that Prestige unlawfully deprived Plaintiffs of their property interests in the Vehicle. (COMPLAINT, ¶¶ 10-18). The Complaint seeks the return of the Vehicle[19] and $137,576.00 in damages, as well as attorneys' fees for prosecuting this case pursuant 42 U.S.C. §1988. (COMPLAINT, ¶ 118).[20]

---

[17] The Notice of Sale lists $49,084.00 as the "amount of lien for repair, rebuilding, tire, etc.," and $50,534 for the "amount of lien with auctioneer fees at the time of auction."

[18] Plaintiffs state that this invoice is dated September 11, 2015, however, the invoice clearly shows the date as "9-11-16."

[19] As noted above, the Vehicle has now been returned to Plaintiffs in exchange for the posting of a monetary bond.

[20] The Court notes an evolution in Plaintiffs' claims for damages that will be a relevant consideration in determining damages for the conversion claim (the only remaining issue following the grant of Plaintiffs' Motion for Partial Summary Judgment). In their Complaint, Plaintiffs state that they are that entitled to $137,576.00, which they claim is the value of the Vehicle. (COMPLAINT, ¶¶ 10, 43). Elsewhere in their Complaint, however, Plaintiffs also request an unspecified amount monetary damages that resulted from depreciation and physical damage to the Vehicle, though it is unclear whether Plaintiffs believe these damages are included in the $137,576.00. (COMPLAINT, ¶¶ 107-

Plaintiffs filed this Motion for Partial Summary Judgment on March 31, 2017 contending that they are entitled to judgment as to the remaining counts in the Complaint, essentially arguing that there is no evidence that any services or parts were supplied by Prestige and, therefore, no basis for the "garageman's lien." As stated by Plaintiffs, Prestige has "done nothing that could form the basis of a valid garageman's lien." Therefore, Plaintiffs believe they are "entitled to judgment on their counts for replevin, liability for conversion, and a declaration that Defendant has no rights in the Vehicle as a matter of law." Plaintiffs further argue that Prestige has failed to assert a claim against the bond that Plaintiffs posted, as required under Maryland law.

Under Federal Rule of Civil Procedure 56, "the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "In considering a motion for summary judgment, the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Gbenoba v. Montgomery Cty. Dep't of Health & Human Servs., 209 F. Supp. 2d 572, 575 (D. Md. 2002) (internal citations and quotations omitted).  "A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id. "Thus, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the nonmoving party on the evidence presented." Id. (brackets omitted).  "In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom in the light most favorable to the party opposing the motion but the opponent must bring forth evidence upon which a reasonable fact finder could rely." Id.  "The mere existence of a *scintilla* of evidence in support of the

---

120). In their Motion for Partial Summary Judgment and Reply memorandum, Plaintiffs' theory of damages has changed, as they argue that no alterations or changes were made to the Vehicle.

nonmoving party's case is not sufficient to preclude an order granting summary judgment." Id. (emphasis in the original).

A brief overview of the remaining counts in Plaintiffs' Complaint, and the legal requirements for satisfying those counts, is necessary. In Count II of the Complaint, entitled "Replevin," Plaintiffs state that because Lessee defaulted under the Lease Agreement, Plaintiff, Daimler Trust, was entitled to take possession of the Vehicle. Following that default, Plaintiffs demanded possession of the Vehicle on December 28, 2015 from Prestige but were rebuffed. (COMPLAINT, ¶¶ 67-72). "Under Maryland law, replevin allows a person claiming the right to immediate possession of personal property to file an action for possession before judgment." Griaznov v. J-K Techs., LLC, No. CV ELH-16-2522, 2017 WL 915000, at *11 (D. Md. Mar. 8, 2017) (citations, brackets, and quotations omitted); see also Dehn Motor Sales, LLC v. Schultz, 439 Md. 460, 486, 96 A.3d 221, 237 (2014) ("In a replevin action, a party seeks basically to recover specific goods and chattels to which he or she asserts an entitlement to possession."); Furda v. State, 193 Md. App. 371, 398; 997 A.2d 856, 872 n.17 (2010) ( "Replevin is appropriate 'in all cases where the object of the suit is to recover possession of specific goods and chattels, to the possession of which the plaintiff claims to be entitled at the time of instituting the suit"). "Whoever is entitled to possession, whatever may be his title in other respects, may maintain or defeat the action of replevin; his right to success in the action of replevin depends entirely on his right to possession." Griaznov, 2017 WL 915000, at *11 (citations, brackets, and quotations omitted).

In Count IV of the Complaint, entitled "Conversion," Plaintiffs state that Prestige "knowingly and willingly" possessed the Vehicle without Plaintiffs' consent or authorization to do so. They further allege that Prestige exercised full dominion and control over the Vehicle,

caused physical damage to it by attempting to convert the Vehicle into a "racing-type car"[21] and refused to release the Vehicle upon demand. (COMPLAINT, ¶¶ 97-102). "Under Maryland law, conversion involves any distinct act of dominion or control exerted by one person over the personal property of another in denial of his right or inconsistent with it." Great Am. Ins. Co. v. Nextday Network Hardware Corp., 73 F. Supp. 3d 636, 640 (D. Md. 2014) (citations and quotations omitted). For instance, this Court has noted the Maryland Court of Special Appeals' decision in Inmi–Etti v. Aluisi, 63 Md.App. 293, 492 A.2d 917 (Md.Ct.Spec.App.1985), wherein that Court "found Pohanka Oldsmobile–GMC, Inc. ("Pohanka") liable for conversion where Pohanka had purchased a car from an individual who had taken possession of the car without the owner's authorization." Great Am. Ins. Co. v. Nextday Network Hardware Corp., 73 F. Supp. 3d 636, 640 (D. Md. 2014) (citing Inmi-Etti, 492 A.2d at 918–19, 923).

Finally, in Count V, entitled "Declaratory Relief," Plaintiffs seek a declaration pursuant to 28 U.S.C. § 2201 that "[Defendant] must release [the Vehicle] to [Plaintiffs] and that all monetary charges asserted against [the Vehicle] are null and void against [Plaintiffs]. (COMPLAINT, ¶¶ 104-105). "The Declaratory Judgment Act, 28 U.S.C. § 2201 (2012), grants federal district courts discretion to entertain declaratory judgment actions," in situations where "the relief sought (i) will serve a useful purpose in clarifying and settling the legal relations in issue and (ii) will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Res. Real Estate Servs., LLC v. Evanston Ins. Co., No. CV GLR-16-168, 2017 WL 660800, at *2, fn. 1 (D. Md. Feb. 17, 2017) (quotations and citations omitted).

In determining whether Plaintiffs are entitled to judgment as a matter of law on these three counts, the question of whether Prestige had a lawful basis for detaining and possessing the

---

[21]Based on discovery, Plaintiffs now contend that nothing was done to the car, but that it should have been returned to them when previously demanded.

Vehicle is an essential consideration. Based on Plaintiffs' Motion for Partial Summary Judgment and Reply memorandum, as well as the Notice of Sale and the statements made by Prestige in its Motion to Dismiss, the most logical conclusion is that Prestige contended it was entitled to retain the Vehicle as a legal remedy under Maryland's "garageman's lien" statue.

Succinctly put, a "garageman's lien" is "an ex parte, prejudgment creditor's remedy," which derived from the common law and is now codified in the Commercial Law Article of the Maryland Code (Md. Code Ann., Com. Law § 16-201 - § 16-209). Allstate Lien & Recovery Corp. v. Stansbury, 126 A.3d 40, 49–50 (Md. 2015) (citing George W. Chesrow, Garageman's Lien: Application of Procedural Due Process Safeguards, 28 U. Miami L.R. 458, 459 (1974)); see also Friendly Fin. Corp. v. Orbit Chrysler Plymouth Dodge Truck, Inc., 835 A.2d 1197 (Md. 2003). In two recent decisions, the Court of Appeals has explained the legislative creation and enforcement of the "garageman's lien":

> The Maryland General Assembly, when it enacted the provisions relating to garageman's liens, envisioned that the statute would operate according to the following sequence of events:
>
> > (1) The owner in possession of the motor vehicle takes it (or has it towed) to the garage and requests that it be repaired. § 16–202(c)(1).
> >
> > (2) The garage performs the requested repairs, creating a lien in favor of [the] garage for the repair bill, and bills the owner. § 16–202(c)(2)(i).
> >
> > (3) The owner fails to pay the bill.
> >
> > (4) The garage stores the vehicle, creating a lien in favor of the garage for storage costs. § 16–202(c)(1)(ii).
> >
> > (5) The garage retains possession of the vehicle until either the charges are paid or the lien is otherwise discharged. § 16–203(a).
> >
> > (6) The garage, within 30 days of the creation of the lien, sends notice of the lien to all holders of perfected security interests. § 16–203(b)(1)(i).

(7) If the bill remains unpaid for 30 days, the garage, at its option, may initiate a public sale of the vehicle. § 16–207(a).

(8) The garage sends notice, at least 10 days prior to sale, to the owner, all holders of perfected security interests, and the Motor Vehicle Administration. § 16–207(b)(2).

(9) The garage publishes notice once a week for the two weeks immediately preceding the sale in one or more newspapers of general circulation in the county where the sale is to be held. § 16–207(b)(1).

(10) The garage sells the vehicle. § 16–207.

(11) Proceeds of sale are applied as follows: § 16–207(e)(1)(i).

> i.   Expenses of the sale. § 16–207(e)(1)(ii).
>
> ii. Third-party storage fees. § 16–207(e)(1)(ii).
>
> iii. The lien claim for garage repair and storage bills. § 16 207(e)(1)(iii).
>
> iv. Any purchase money security interest. § 16–107(e)(1)(iv).
>
> v. Any remaining secured parties of record. § 16–207(e)(1)(v).
>
> vi. Any remaining balance to the owner. § 16–207(e)(4).

Allstate, 126 A.3d 40, 48–49 (footnotes omitted) (citing Friendly, 835 A.2d at 1202–03).

Two of the above cited provisions—§16–202, entitled "Creation of lien," and § 16–203, entitled "Right to retain possession"—provide the starting point for determining whether Defendant had a lawful basis for detaining the Vehicle. Specifically, §16–202 provides, in relevant part:

(c)(1) Any person who, with the consent of the owner, has custody of a motor vehicle and who, at the request of the owner, provides a service to or materials for the motor vehicle, has a lien on the motor vehicle for any charge incurred for any:

(i) Repair or rebuilding;

(ii) Storage; or

(iii) Tires or other parts or accessories.

Further, § 16–203 states, in part, that: "(a) The lienor may retain possession of the property subject to the lien until: (1) The charges which give rise to the lien are paid; or (2) The lien is otherwise discharged in accordance with this subtitle."

Bearing in mind that it is Prestige's burden to establish the existence of a valid lien pursuant to § 16-208(a)(3) ("The defendant has the burden of proof to establish his lien claim to the same extent as if he were a plaintiff in an action to secure judgment on an open account"), the Court finds that there is no genuine dispute of fact that Prestige did not have a valid lien on the Vehicle and therefore had no right to retain it when its return was demanded by Plaintiffs.

First, the facts properly before the Court establish that no "repair or rebuilding" was done to the Vehicle, nor were any "tires or other accessories" added to it. Not only do the requests for admission, deemed admitted under Rule 36, establish this, (REQUESTS FOR ADMISSION, ¶¶ 24-26, 28),[22] but Plaintiffs introduced an unchallenged expert report from a "Master Certified Mercedes Benz technician," who inspected the Vehicle after it was returned to Plaintiffs,[23] and that report concluded that "the Vehicle is in original, factory condition, and contains only original equipment manufacturer ("OEM") parts."

The three conflicting invoices, which were introduced into the record by Plaintiffs and purportedly show charges in connection with alterations made to the Vehicle, do not refute this conclusion. Plaintiffs note that those invoices, all of which have different amounts owed, were introduced for the limited purposes of questioning their authenticity and for refuting the claim that any work was, in fact, done on the Vehicle. Not only do these discrepancies support

---

[22] Those requests state: "24. You did not install any parts in the Vehicle. 25. You did not make any repairs to the Vehicle. 26. You did not make any modifications to the Vehicle. … 28.When you turned over possession of the Vehicle, it contained a standard, original manufacturer equipped ECU chip."

[23] The expert's report is dated November 17, 2016. (ECF No. 47-2).

Plaintiffs' disbelief in the authenticity of these invoices, but the Court notes that Prestige did not introduce or mention these invoices in any filing that is properly before the Court. Thus, there is no sponsor to these invoices as to their authenticity or accuracy that would create a genuine dispute of fact as to the existence and amount of any storage fees.

As it relates to the storage of the Vehicle, which can be a cost that serves as the basis of a lien, the Court is not satisfied that any costs or charges were incurred for storage of the Vehicle as required by §16–202(c)(1). The invoices that were submitted by Prestige to Plaintiffs, as noted above, are inconsistent. The storage fee on the December 2015 invoice is "blank." DEC. 2015 INVOICE. Similarly, there is no storage fee listed on the September 2016 invoice. SEPT. 2016 INVOICE. However, the invoice dated "2/2/2016" lists $6,450.00 for "Storage Fees – 9/28/15 thru 2/3/16 (129 days)." FEB. 2016 INVOICE. Furthermore, the Court notes that even if the invoices genuinely showed that Prestige had incurred storage fees for the Vehicle, the amount listed is problematic as it included time after Plaintiffs had demanded possession of the Vehicle.

Because the factual record does not support the basis for a "garageman's lien," the Court need not reach the question of whether a "garageman's lien" is valid as against the owner/lessor of a vehicle in the absence of a showing of actual or implied consent or authority by the owner/lessor for the lessee to seek repairs or modifications to the vehicle. There is no Maryland case directly addressing this issue, and at least one court has denied a "garageman's lien" under similar circumstances. See Mercedes-Benz Credit Corp. v. One Stop Auto & Truck Centers, Inc., 650 N.Y.S.2d 913, 914 (Sup. Ct. 1996) (applying N.Y. Lien Law § 184 (McKinney). On the other hand, the Maryland Court of Appeals has endorsed a broad definition of "owner" for purposes of applying the "garageman's lien" statute that might be construed to include a lessee as one who could have the ability to bind an owner/lessor under appropriate circumstances. See

24

Friendly Finance Corp. v. Orbit Chrysler Plymouth Dodge Truck, Inc., 835 A.2d 1197, 1206-07 (Md. 2003). That issue remains for another day.

Having established that Prestige did not have a valid "garageman's lien" over the Vehicle, and that no other legal right existed for Prestige's to retain possession of the Vehicle, it is clear that Plaintiffs have shown that there is no genuine dispute of material fact that the elements of their three remaining counts have been established.

Replevin

A replevin action is appropriate where the party initiating the action "seeks basically to recover specific goods and chattels to which he or she asserts an entitlement to possession." Dehn Motor Sales, LLC v. Schultz, 96 A.3d 221, 237 (2014). As provided by §16-208 of the Commercial Law Article of the Maryland Code, "a court may issue a writ of replevin when the owner of a vehicle," such as Plaintiffs in this case, "would have rightful possession of that vehicle but for a lien." Griaznov v. J-K Techs., LLC, No. CV ELH-16-2522, 2017 WL 915000, at *12 (D. Md. Mar. 8, 2017) (citing § 16-208). However, given that Plaintiffs recovered the Vehicle by posting the corporate bond, rather than the issuance of a writ of replevin, Plaintiffs state that the effect of grant of summary judgment on this count will be to discharge the corporate bond that was filed that allowed Plaintiffs to regain possession of the Vehicle. The Court agrees. It is only logical that if Plaintiffs had to post a bond to regain the rightful possession of their property, their bond obligations should be forgiven when, as here, it has been established that Prestige had no right to retain the Vehicle.

Additionally, Plaintiffs have a statutory entitlement to such an order discharging the $105,000 bond, which was filed on March 11, 2017, and approved by this Court on June 27, 2016. Pursuant to §16-206(a)(1-2), "[i]f the owner of property subject to a lien," here Plaintiffs,

"disputes any part of the charge for which the lien is claimed, [they] may institute appropriate judicial proceedings," which "stays execution under the lien until a final judicial determination of the dispute." Thus, in this case, the lien was stayed as a result of Plaintiffs filing their Complaint in this Court. Further, "[i]f the owner of property subject to a lien disputes any part of the charge for which the lien is claimed, he immediately may repossess his property by filing a corporate bond for double the amount of the charge claimed." §16-206(b)(1). That bond, which is subject to the Court's approval, also "stays execution under the lien until final judicial determination of the dispute." §16-206(2-4). Ultimately, "[i]f suit is not instituted by the lienor within six months after the bond is filed, the bond is discharged." § 16-206(6) (emphasis added).

Here, Plaintiffs complied with the procedures set forth under § 16-206: they instituted the present judicial proceedings, they filed a bond for the required amount ($105,000 was roughly double the amount of the $50,534 charge claimed by Prestige) to repossess the Vehicle, and they presented that bond for the Court's approval which was granted. Under §16-206. Prestige was required to file suit within six (6) months after the bond was filed, the deadline for which was September 11, 2016. Accordingly, because Defendant has not filed suit, nor did it file a counterclaim in this case, § 16-206(6) provides an additional reason to discharge the bond.

<u>Conversion</u>

The required elements for a claim of conversion are also met. Plaintiffs requested that Prestige turn over possession of the Vehicle in December of 2015 but Prestige refused to do so, and instead retained possession of the Vehicle despite having no lawful basis for doing so. Moreover, Prestige attempted to have the Vehicle sold to satisfy the purported lien.  These are clearly an **"**act of dominion or control exerted by" Prestige, "over the personal property of [Plaintiff] in denial of his right or inconsistent with it." <u>Great Am. Ins. Co. v. Nextday Network</u>

26

Hardware Corp., 73 F. Supp. 3d 636, 640 (D. Md. 2014) (citations and quotations omitted). Accordingly, the Court finds that there is no genuine dispute of fact that the requirements for a claim of conversion are met. However, as Plaintiffs acknowledge, this grant of summary judgment will be limited to the question of liability as the issue of damages has not yet been established.

Declaratory Relief

The Court also grants summary judgment as to Plaintiffs request for declaratory relief. For the reasons set forth above, Defendant did not have a valid "garageman's lien" against the Vehicle, nor is there any evidence before the Court that Defendant had any interest in the Vehicle.

### III.   Subject Matter Jurisdiction

Finally, the Court will address the issue of subject matter jurisdiction that Prestige raises in its Response in Opposition to summary judgment. Defendant contends that the Court should dismiss this case for lack of subject matter jurisdiction. A brief procedural review of this case is needed to understand Defendant's claim. As mentioned before, Defendant previously filed a Motion to Dismiss in this case, arguing, in part, that the allegations pleaded in the Complaint were insufficient to establish subject matter jurisdiction because "the amount-in-controversy between the diverse parties does not in fact exceed $75,000 as required by 28 U.S.C. §1332." Specifically, Defendant argued that "[t]he amount-in-controversy [was] the amount of the retaining lien asserted by the Defendant under Maryland law: $50,534.00 plus any damages provable by the Plaintiffs for the unlawful detainer of the personality."

Judge Hollander, writing for this Court, rejected that argument, stating that "[t]he crux of the Complaint is that Prestige is in unlawful possession of a vehicle that is owned by Daimler Trust and in which Daimler Title holds a lien. The Complaint alleges that the vehicle is worth $137,576, [and] Plaintiffs seek, *inter alia*, the return of the vehicle." (Citations to the record omitted). Judge Hollander went onto say, however, that "*if* the vehicle is returned and *if* the vehicle's alleged value has not been extinguished through the modifications that Prestige has purportedly performed, it is conceivable that, *if* successful, plaintiffs may be entitled to recover money damages of less than $75,000.  Yet, prognostication about possible damages does little to rebut the core allegation in the Complaint that Prestige is in possession of $137,576 worth of plaintiffs' property and will not give it back." (Emphasis in the original).

Prestige seizes upon this language in support of its revived argument to dismiss for lack of subject matter jurisdiction, claiming that because the Vehicle was returned to Plaintiffs (pursuant to the Stipulation of Release and Filing of the Bond), the amount-in-controversy is now limited to $50,534, the amount of the lien. In other words, Prestige argues that "based on Judge Hollander's standards set forth previously in this case, once the property was returned to the Plaintiffs, this Court's jurisdictional requirement ceased to be met." (ECF No. 49, ¶ 7).

As the Fourth Circuit has stated, "a federal court is obliged to dismiss a case whenever it appears the court lacks subject matter jurisdiction." Lovern v. Edwards, 190 F.3d 648, 654 (4th Cir. 1999) (citing Fed.R.Civ.P. 12(h)(3)). "Indeed, the absence of jurisdiction may be raised at any time during the case, and may be based on the court's review of the evidence." Lovern, 190 F.3d at 654 (internal citations omitted). "It is elementary that the burden is on the party asserting jurisdiction to demonstrate that jurisdiction does, in fact, exist." Id. That is to say, when "a defendant challenges the existence of subject matter jurisdiction in fact, the plaintiff bears the

burden of proving the truth of such facts by a preponderance of the evidence." U.S. ex rel. Vuyyuru v. Jadhav, 555 F.3d 337, 347 (4th Cir. 2009).

"Under 28 U.S.C. § 1332(a)(1), the federal district courts have subject matter jurisdiction over 'civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States.'" Mackin v. Variety Wholesalers, Inc., No. CIV.A. ELH-13-03849, 2014 WL 1320027, at *2 (D. Md. Mar. 31, 2014) (citing 28 U.S.C. § 1332(a)(1)). Here, Defendant's Response in Opposition, just like its original Motion to Dismiss, challenges only whether Plaintiffs have satisfied the amount-in-controversy threshold of $75,000 and does not call into question the diverse citizenship requirement.[24]

"Generally, the amount requested in the complaint determines the amount-in-controversy. Momin v. Maggiemoo's Int'l, L.L.C., 205 F. Supp. 2d 506, 508–09 (D. Md. 2002) (internal citations omitted). "In determining whether an amount-in-controversy is sufficient to confer jurisdiction, courts apply one of two legal standards depending on whether the damages are specified or unspecified in the complaint."[25] Momin, 205 F. Supp. 2d at 509 (footnote in the original). In cases "[w]here a plaintiff claims a specific amount in damages that is less than $75,000, removal is proper only if the defendant can prove to a 'legal certainty' that the plaintiff would actually recover more than that if she prevailed. Id. (citation omitted). "If, on the other

---

[24] "Daimler Trust is a Delaware Trust, whose trustee, BNY Mellon Bank of Delaware, is a Delaware banking corporation. The sole beneficiary of Daimler Trust is Daimler Trust Holding LLC, whose sole member is Mercedes-Benz Financial Services USA LLC, whose sole member is Daimler Investments US Corporation, a Delaware Corporation." (ECF No. 11, at 2), (COMPLAINT, ¶ 7). Daimler Title is "a corporation organized and existing by virtue of the laws of the State of Delaware. " (COMPLAINT, ¶ 8). Prestige "is a Limited Liability Company organized under the laws of Maryland, with a principal place of business in Maryland, and a registered agent in Maryland. Public records indicate Prestige's sole member is Omid Shaffaat, and public records indicate Mr. Shaffaat is a Maryland resident." (ECF No. 11, page 2).

[25] "The Fourth Circuit has not articulated the precise standard to be applied in ascertaining the amount-in-controversy for diversity jurisdiction." Momin v. Maggiemoo's Int'l, L.L.C., 205 F. Supp. 2d 506, 509 (D. Md. 2002).

hand, a plaintiff's complaint does not allege a specific amount in damages, a defendant need only prove by a preponderance of the evidence that the amount-in-controversy exceeds the jurisdictional minimum." Id. (citing Cohen v. Office Depot Inc., 204 F.3d 1069 (11th Cir.2000)) (footnote omitted).

Defendant's argument is unpersuasive for several reasons. First, it is a well-established principle that "[d]iversity jurisdiction is determined as of the date the suit is filed." Gardner v. AMF Bowling Centers, Inc., 271 F. Supp. 2d 732, 733 (D. Md. 2003) (citing Porsche Cars N. Am., Inc. v. Porsche.Net, 302 F.3d 248, 255–56 (4th Cir.2002), where the Fourth Circuit held that "a court determines the existence of diversity jurisdiction at the time the action is filed, regardless of later changes in originally crucial facts such as the parties' citizenship or the amount-in-controversy"). That is to say, "even if 'the plaintiff after removal, by stipulation, by affidavit, or by amendment of his pleadings, reduces the claim below the requisite amount, this does not deprive the district court of jurisdiction.'" Gardner, 271 F. Supp. 2d at 733 (citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 292 (1938)). Accordingly, subject matter jurisdiction is still present here because, just as Judge Hollander stated in her earlier opinion, the amount-in-controversy at the time of the filing was $137,576, the value of the Vehicle, which is above the threshold amount of $75,000.

Second, even if the Court were to ignore that principle, the fact that Plaintiffs have regained possession of the Vehicle does not change the analysis because Plaintiffs were only able to obtain possession of the Vehicle by filing a $105,000 bond for the Vehicle, an amount that is also above the $75,000 requirement. Additionally, as mentioned in reference to the conversion count, Plaintiffs claim additional damages for depreciation and, potentially other damages based on Prestige's wrongful retention.

30

Finally, even if these above circumstances were not the case, the Court can still exercise supplemental jurisdiction over this case pursuant to 28 U.S.C. § 1367(c)(3). In Shanaghan v. Cahill, 58 F.3d 106 (4th Cir. 1995), the Fourth Circuit stated that when the amount-in-controversy drops below the threshold amount needed for federal diversity jurisdiction, a court may exercise discretion to retain jurisdiction under the supplemental jurisdiction, which allows courts discretion to dismiss or keep case when it has dismissed all claims over which it has original jurisdiction. Shanaghan, 58 F.3d 110 ("the supplemental jurisdiction model of discretion should apply when the amount-in-controversy falls below the fifty thousand dollar threshold, just as it does when a federal question or a diverse claim falls out of a case").

The supplemental jurisdiction doctrine "is one of 'flexibility,' and therefore, a court's exercise of discretion under § 1367(c)(3) is afforded 'wide latitude.'" Shanaghan, 58 F.3d at 110 (internal quotation marks omitted). There are four factors that this Court considers "in deciding whether to exercise supplemental jurisdiction: convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." Id. (internal quotation marks omitted). In addition to these factors, "this Court should consider the 'amount of time and energy that has already been expended, and decide whether it might be more efficient to simply retain jurisdiction.'" Taylor v. Lotus Dev. Corp., 906 F. Supp. 290, 299 (D. Md. 1995) (citing Shanaghan, 58 F.3d at 112).

The consideration of these factors weighs in favor of maintaining jurisdiction. The parties have maintained this action in this Court since 2016, and have gone through the pleadings phase, the discovery phase, and now the dispositive motions phase of litigation. The Court is not aware, nor does Prestige cite, any issue of fairness, federal policy, comity, or concern for judicial economy that would convince this Court that continued jurisdiction would not be proper.

Accordingly, the Court will deny Prestige's request to dismiss this case for lack of subject matter jurisdiction.

**IV.    Conclusion**

For the foregoing reasons, Plaintiffs' Motion to Strike, (ECF No. 52), is GRANTED, and Plaintiffs' Motion for Partial Summary Judgment, (ECF No. 46), is GRANTED. The only remaining issue remaining for trial is what damages flow from Prestige's conversion of Plaintiffs' property.  A separate order shall follow.


Dated: July 18, 2017                    _____/s/_____
                                         J. Mark Coulson
                                         United States Magistrate Judge